Coös,
Feb. 5, 1918. }

### CONNECTICUT VALLEY LUMBER COMPANY

*v.*

### MAINE CENTRAL RAILROAD.

In general, the remedial procedure of another state or country, including its statute of limitations, will not be enforced by the courts of this state, but this principle is usually confined to common law causes of action and those whereof the right of action itself is not, by the foreign law, destroyed by the lapse of the statutory period.

Whether under the railroad fire statute of Canada the limitation of the right of action is merely remedial and without effect to bar an action in this state, or whether by expiration of the period of limitation the right of action itself is destroyed, is a question of fact for the superior court.

If a person, while in one jurisdiction, perform a negligent act which is the proximate cause of damage to property in another jurisdiction, the locality of the act is deemed at common law to be the same as that of the damage.

P. S., c. 159, s. 29, making railroads liable for damage to persons or property by fire from any locomotive, does not apply to a locomotive of a foreign railroad corporation operating in another state or country and there causing a fire which is communicated to property in this state.

CASE, for damages caused by a fire alleged to have been set by the defendant. Facts agreed. On July 14, 1911, the plaintiff was the owner of a trestle bridge extending from Auckland in the Province of Quebec and Dominion of Canada to Pittsburg in this state, spanning Hall stream, which is the international boundary at that point. On that date, one of the defendant's locomotives which it was operating within Auckland set fire to the bridge, which was burned and destroyed. The fire originated in that town, but spread to that part of the bridge located in Pittsburg and destroyed it. The defendant claimed that the statute of Canada (*c.* 37, Rev. Stat., Can. 1906, *s.* 306) applicable to the facts, requiring suit to be commenced within one year after the injury occurred, was a bar to this action, which was begun November 18, 1916. The sole question transferred by *Branch*, J., without a ruling from the April term, 1917, of the superior court is whether the Canadian statute is a bar.

*Herrick, Smith, Donald & Farley* and *Daniel J. Lyne* (all of

Massachusetts) and *Sullivan & Daley* (*Mr. Lyne* orally), for the plaintiff.

*Rich & Marble* (*Mr. Rich* orally), for the defendant.

WALKER, J.   It is admitted by the plaintiff that its cause of action, if prosecuted in the courts of Canada, is barred, or may be barred by statutory limitation.   The statute referred to (*c.* 37, Rev. Stat. Can. 1906) provides in *s.* 298 for the recovery from a railroad of damages caused by a fire started by a locomotive used by the railroad, whether guilty of negligence or not; and in *s.* 306 that "All actions or suits for indemnity for any damages or injury sustained by reason of the construction or operation of the railway shall be commenced within one year next after the time when such supposed damage is sustained, or, if there is continuation of damage, within one year next after the doing or committing of such damage ceases, and not afterwards."   As to so much of the plaintiff's bridge as was located within the territorial boundaries of Canada, it is not doubted that the statutes of that province would be applicable in an action there.   Hence the question arises whether, since the statutory period of limitation prescribed in *s.* 306 became complete long before this suit was begun, it constitutes a defence which may be relied upon in this state.

It is too well settled to require the citation of authorities that, ordinarily, remedial procedure is governed by the law of the place where the suit is brought, although it may differ materially from the remedy established in the state or jurisdiction within which the cause of action arose.   Each state is entitled to adopt for the guidance of its courts such rules or laws pertaining to the methods of procedure for the vindication of rights and the promotion of justice as it may deem convenient and reasonable; and litigants who resort to its courts or are compelled to appear therein cannot insist upon the trial of their rights by some other or different rules of procedure which may prevail in the place where the cause of action arose. While the rights and liabilities of parties under a foreign contract are to be determined according to the foreign law, the remedies of the forum must be observed.   And this is equally true with reference to actions of tort.   *Beacham* v. *Portsmouth Bridge*, 68 N. H. 382; *MacDonald* v. *Railway*, 71 N. H. 448, 450.

Statutes of limitation of actions, which do not abolish rights which have become barred thereby, have been held, with few excep-

tions, to relate to the procedure and not to the essential rights of the parties, and to have, therefore, no extra-territorial effect. The mere fact that no action can be maintained upon a contract or for a tort in the state where the parties have lived since a right of action accrued, which appears to be barred by the local statute of limitations, does not constitute a valid defence to the merits of the controversy in another state, nor can it be set up as a bar to the action. If merely the remedy upon the cause of action has ceased to exist, in consequence of the statute of limitations of the state where the obligations or duties involved arose, an action upon the merits may be maintained in another jurisdiction. The foreign limitation in such a case is designed to regulate or limit the use that may be made of local procedure, and not to apply to or modify the essential duties assumed by the parties or to regulate or limit their method of procedure in another forum. This is in effect a finding of legislative intention, which has been so often recognized and enforced by common law courts that it has assumed the form and force of positive law in most jurisdictions.

Nearly one hundred years ago Judge Story held in *LeRoy* v. *Crowninshield*, 2 Mason 151, that a plea of the statute of limitations of the state where a contract was made is no bar to a suit brought in a foreign tribunal to enforce the contract. This result was reached, notwithstanding his severe criticism of the doctrine which upon principle he believed was wrong, because, (*p.* 176): "The error, if any has been committed, is too strongly engrafted into the law, to be removed without the interposition of some superior authority." See Story Confl. Laws, *s.* 576; *Townsend* v. *Jemison*, 9 How. 407; 1 Wood Lim's, p. 36.

Although the parties had lived in the state under whose laws the liability was incurred until the statutory limitation of that state took effect, it has been held in accordance with the general rule that such limitation was of no avail in the courts of another state. *Perkins* v. *Guy*, 55 Miss. 153; *Bulger* v. *Roche*, 11 Pick. 36; *Townsend* v. *Jemison, supra; Thompson* v. *Reed*, 75 Me. 404. And Wharton (2 Confl. Laws, *s.* 537), says: "This is undoubtedly the rule in the absence of a statute of the forum to the contrary." See Wood Lim's, *p.* 323; Angell Lim's, *p.* 62. In *Paine* v. *Drew*, 44 N. H. 306, 320, the general rule was stated as follows: "We believe that the authorities, both from the civil and the common law, concur in establishing the rule, that the nature, validity, construction and effect of contracts is to be determined by the law of the place where the

contract is made or is to be performed; *lex loci contractus.* But that all the remedies for enforcing such contracts are regulated by the law of the place where such remedies are pursued; *lex fori;* and that ordinarily the statute of limitations of a State does not in anyway attach itself to or affect the contract; it is no part of the *lex loci,* but affects and limits the remedy merely, and belongs purely to the *lex fori;* that it does not operate as a discharge of the contract, or as a defense against the contract itself, but is interposed as a bar to the maintenance of an action; it limits the time within which the remedy must be pursued or applied." It was accordingly held that an action may be maintained in our courts, when not barred by our statute of limitations, upon a contract made in another state, though action thereon was barred by the statute of that state. Doubtless it would be competent for the legislature to provide that when a foreign statute of limitations has become a bar to the maintenance of a suit upon a cause of action which arose in such foreign jurisdiction, it may be pleaded in bar of such suit here. Wharton Confl. Laws, s. 537 *a.* But in the absence of such legislative provision, the remedial procedure of another state or country cannot be enforced by the courts of this state. This principle of construction, however, is not of unlimited application. It is usually confined to causes of action which are recognized at common law and those which are not discharged under the foreign law by the statutory lapse of time. 1 Wood Lim's, s. 8; *Lamberton* v. *Grant,* 94 Me. 508, 518, 519; *Eingartner* v. *Company,* 103 Wis. 373; *Davis* v. *Mills,* 194 U. S. 451, 454; *The Harrisburg,* 119 U. S. 199; *Rodman* v. *Railway,* 65 Kan. 645; *Negaubauer* v. *Railway,* 92 Minn. 184.

With reference to so much of the bridge as was in Canada, the burden is on the plaintiff to show that it has a valid cause of action under the law of that country against the defendant for the injury alleged. The claim is made that it is entitled to recover under the statute of Canada, as well as at common law: the defendant pleads that the plaintiff's cause of action is barred because it was not brought within the time limited by the Canadian statute: the plaintiff admitting that it could not sustain its action in Canada, because of the limitation, insists that the cause of action alleged was not affected by the mere expiration of the time limit within which suit could be sustained in that country, because the limitation related to the remedy and not to the right. The defendant insists that the expiration of the limitation destroyed the right as well as the remedy.

The question thus presented is whether the statutory limitation of Canada in its application to the plaintiff's alleged cause of action is merely remedial and of no effect in this state, or whether it also obliterated the right upon which an action might have been maintained before the limitation expired. In effect, this court is asked to construe the Canadian statute, that is, to determine judicially what the statute was intended to mean by the enacting body. It seems to be assumed that it is the duty of the court to decide the question in the same way it would decide a similar question involving the construction of a New Hampshire statute, by considering the legislative language, the apparent purpose, and the pertinent authorities. But the assumption is unsound, in view of the recent decision in *Hansen* v. *Railway, ante,* 518. The question is one of fact to be found from all the competent evidence submitted, including the testimony of experts, when its solution is difficult and doubtful. *Jenne* v. *Harrisville,* 63 N. H. 405. It may involve the drawing of inferences relating to the credibility of witnesses or the reasonableness of their views or the extent of their knowledge upon the subject in issue. Obviously, work of that character falls within the exclusive province of the tribunal charged with the duty of ascertaining litigated facts, and is not within the province of the law court. The decision in *Hansen* v. *Railway, supra,* renders further discussion of this subject unnecessary.

As there has been no trial of the facts and no ruling or finding has been made upon the effect of the statute, and as it does not conclusively appear from the statute and the authorities which counsel have called to our attention (*Canadian Northern Railway* v. *Pszenicnzy,* 20 Can. Ry. Cas. 417; *Greer* v. *Railway,* 31 Ontario Law 419; *S. C.* 51 Can. S. C. R. 338; *Levesque* v. *Railway,* 29 N. B. 588), even if they were deemed to be evidence in the present situation of the case, what the true construction of the statute, in a case like the present, would be in the Dominion of Canada, or that the plaintiff's position is correct, it is for the superior court to find the fact from such competent evidence as may be submitted to it at the trial. *Ferguson* v. *Clifford,* 37 N. H. 86, 98. If it is found that the limitation relates merely to the remedy and does not obliterate the right, the plaintiff's right of action exists and is maintainable here for the burning of the Canadian part of the bridge. *Hill* v. *Railroad,* 77 N. H. 151.

It is suggested that as the plaintiff's right to damages arose by virtue of the foreign statute in question and was apparently main-

tainable without proof of negligence on the part of the defendant, the liability is one unknown to the common law of Canada, and that the limitation, according to some of the authorities above cited, extinguished the right.    But if the principle thus invoked is sound and there is a distinction in this respect between causes of action at common law and those created by statute, the difficulty is in determining what the common law of Canada is under the facts of this case.    If, for instance, the doctrine of *Fletcher* v. *Rylands*, L. R. 1 Ex. 265; S. C. L. R. 3 E. & I. App. Cas. 330, which has been rupudiated in this state (*Garland* v. *Towne*, 55 N. H. 55; *Moore* v. *Company*, 74 N. H. 305; *Garland* v. *Railroad*, 76 N. H. 556, 566), is deemed to be the law of Canada, it might be held that the statute as applied to the plaintiff's damage was merely a reënactment of the common law and did not create a new or distinct cause of action. At most, an attempt to solve the question in the present state of the case would be little more than speculation as to a controverted fact, in the absence of competent evidence.    The presumption that the common law of a foreign jurisdiction is the same as that of the forum is not conclusive, but may be rebutted by evidence that it is different.    *Trafton* v. *Garnsey*, ante, 256.    The parties are entitled to litigate that issue of fact before the superior court.

So far as that portion of the bridge which was situated in this state is concerned, the plaintiff may recover the damages it suffered by its destruction under the count in the declaration for negligence, by virtue of the law of this state upon that subject.    As our statute of limitations has not run against the enforcement of this claim, and as the resulting damage caused by the alleged negligence occurred in this state, a cause of action thereupon arose in favor of the plaintiff which is governed and defined by New Hampshire law. While the defendant's negligent acts occurred in Canada, the resulting injury to the plaintiff's property occurred in this state.    If one, while in one jurisdiction, performs a negligent act which is the proximate cause of damage to property in another jurisdiction, the locality of the act is deemed at common law to be the same as that of the damage.    *Worster* v. *Company*, 25 N. H. 525; *Thompson* v. *Crocker*, 9 Pick. 59; *Barden* v. *Crocker*, 10 Pick. 383; *Thayer* v. *Brooks*, 17 Ohio 489; 1 Bish. Cr. Law, s. 110.    Whether a cause of action also arises where the negligent act was in fact performed (*Worster* v. *Company*, supra), it is unnecessary to consider.    If by the negligence of the defendant the bridge was set on fire in Canada and the conflagration extended to the part of the bridge in New

Hampshire and consumed it, such damage was the proximate result of the defendant's negligence for which it may be held responsible in this action. *Hooksett* v. *Railroad*, 38 N. H. 242.

The plaintiff's contention that recovery may be had under P. S., c. 159, s. 29, cannot be sustained under the facts presented. The statute provides that: "The proprietors of every railroad shall be liable for all damages to any person or property by fire or steam from any locomotive or other engine upon their road." Evidently the legislature did not attempt to exercise extra-territorial control over engines operating in a foreign country. The fact that a railroad, while negligently operating an engine in another state or country, damages property within this state may be liable therefor under the common law as administered here, as above indicated, does not prove that it is also liable here under the statute. If one while in Canada throws a lighted squib or other combustible material across the line and burns the buildings of another, he may be indictable under P. S., c. 277, s. 1 for arson (see *Johnson* v. *State*, 92 Ga. 36; *State* v. *Hall*, 114 N. C. 909; Brown Juris., s. 92), if the legislature intended the statute to have that effect. But if, as in this case, the true construction of the statute limits the effect of the statute in question to railroads when operating locomotives upon road-beds in this state, it cannot be extended to the defendant, which was operating its engine in Canada when the damage was done. While it might be argued that the language of the statute does not necessarily exclude the idea that it was intended to have that effect, it is clear that such was not the intent embodied in the original statute passed in 1840, which provided that: "Every Rail Road Corporation or Company now established, or which may hereafter be established within the limits of this State, shall be deemed and held liable to pay fully for all damages which shall hereafter accrue to any person or property within the same, by reason of fire or steam from any locomotive or other engine, used, or to be used upon said roads respectively, for purposes of transportation or otherwise." Laws 1840, c. 561. There can be no doubt that this act was not intended to apply to an engine of a foreign corporation operating in another state. The legislation was directed to corporations "established within the limits of this state" and using engines "upon said roads," that is, upon roads or roadbeds within the limits of the state. A constructive location of an engine at the place of the fire in contradistinction to its actual *situs*, was not included in the language of the statute and was not intended. In subsequent revisions verbal

changes and condensations of the language were made, with no apparent purpose to extend the application of the statute beyond its original meaning as above construed.    See R. S., *c.* 142, *s.* 8; G. S., *c.* 148, *s.* 8; G. L., *c.* 162, *s.* 8; P. S., *c.* 159, *s.* 29.

Nor does the fact the defendant is authorized by the legislature to operate a railroad in this state and does so operate one, change the result, since at the time of the fire it was not exercising its corporate authority under the laws of New Hampshire but under the laws of Canada.    Its status at that time was that of a foreign corporation which was not subject to the provisions of our railroad-fire statute.

*Case discharged.*

All concurred.