## The People of the State of Illinois, Defendant in Error, v. Max Spiegel, Plaintiff in Error.

### Gen. No. 25,836.

1. HUSBAND AND WIFE, § 272*—*when husband is criminally liable for nonsupport.* The Act of 1915 (Callaghan's 1916 Stat. ¶ 3444), providing for the punishment of a husband who neglects and refuses to support and maintain his wife, contemplates that the support due the wife must be required and rendered in Illinois.

2. HUSBAND AND WIFE, § 275*—*when judgment for nonsupport is erroneous.* In a prosecution of a husband under the Act of 1915 (Callaghan's 1916 Stat. ¶ 3444) for neglect and refusal to support his wife, where the evidence in the record indicates that defendant left his wife in New York, where they were then living and that she did not know his whereabouts until 6 or 7 months before the proceedings were instituted, and there is nothing to show that she notified him of her presence in Illinois or made any demand upon him for support before instituting proceedings, and the evidence also tends to indicate her intention to continue to reside in New York, a judgment finding defendant guilty will be reversed.

Error to the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Reversed. Opinion filed November 30, 1920.

L. A. GILMORE, for plaintiff in error.

MACLAY HOYNE and EDWARD E. WILSON, for defendant in error.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Plaintiff in error was found guilty of neglect and refusal to support and maintain his wife, in violation of the Statute of 1915. (Callaghan's 1916 Stat. ¶ 3444.) They were married in Hungary, came to the United States in 1889, and lived in New York until March, 1904, when he left her there with two minor

children, came west, and has resided in Chicago since 1916.

She claims not to have known of his whereabouts since March, 1904, until within 6 or 7 months prior to the trial, when she learned he was in Chicago, and that she never heard, nor received money from him in the meantime. He claims that shortly after he left New York he came to Chicago, obtained a position, furnished an apartment, wrote three letters to his wife, inclosing small sums of money, received a letter from her in November, 1904, which occasioned a suspension of any further communication between them, and admitted that he had been living with another woman since 1906.

In the view we take of the case we shall not refer to the materiality of evidence received or rejected, but rather to the omission of necessary proof. The act on which the information is predicated contemplates, we think, that the support due the wife must be required and rendered in this State. There was no evidence tending to show that the wife had come, or was willing to come, into Illinois for support in this State, or that she took any steps to obtain it from him after she learned he was here. The record indicates that some months after she so learned she came on from her home in New York, and apparently without demand on him for support or even notice to him of her presence in Illinois began criminal proceedings against him, first for bigamy, and then, when the court held the offense was outlawed, changed the charge to the one under consideration.

To show the refusal charged we think under such a state of facts there should have been either proof of an express demand for such support or of other circumstances from which it would be implied, and to show neglect, there should have been proof charging her husband with knowledge that she had come into this State, where the cause of action must arise.

There was no such proof. On the contrary the record indicates an intention to continue her residence in New York, and that she came here, not to secure his support but merely his punishment. But in our view of the law he cannot be punished under the act in question without some such proof of either neglect or refusal to support and maintain his wife in this State as above indicated, and that was not given. Hence the judgment will be reversed.

*Reversed.*

GRIDLEY and MATCHETT, JJ., concur.