## OSBORN v. HARRIS, Warden.

No. 7260.   Decided March 10, 1949.   (203 P. 2d 917.)

George M. McMillan, of Salt Lake City, for plaintiff.

Grover A. Giles, Atty. Gen., and A. John Brennan, Asst. Atty. Gen., for defendant.

PRATT, Chief Justice.

This matter is before us upon a Writ of Habeas Corpus with two issues raised: (1) Was an offense committed in the State of Utah; and (2) was there due process in arresting and extraditing the plaintiff?

Plaintiff was a resident of and physically in The Dalles, Oregon, during the period covered by a criminal complaint filed against him in the State of Utah. The complaint was filed on March 3, 1948, by his wife who, with their minor children, was then living in the State of Utah. She charged him with failure to provide for herself and their minor children, and the period covered by the charge was from October 1, 1947, to March 3, 1948. However, she was not living in the State of Utah all that time, but from the 1st of October, 1947, to about the 23rd of October, 1947, she was living with her husband in The Dalles, Oregon, and between October 23, 1947, and about the 4th or 5th of December, 1947, she was looking after a niece in Burley, Idaho. She came to her former home in Logan, Utah, in December, 1947, and has lived there ever since. Her change of residence from The Dalles, Oregon, to Burley, Idaho, and then to Logan, Utah, was after an agreement with her

husband, which arose out of the fact that he was out of work and was not at that time able to support her and the children. She complained that he had been drinking a great deal for some six months prior to the arrangement and that the agreement was entered into for the purpose of enabling him to get a job and then send for her and the children, or if he was unable to do so, he would go to Burley, Idaho, and see what he could do there.

When she left The Dalles she fully intended to return and live with him and make that city her home, but after she left, she never heard from him any more, and he never sent her any money for herself and the support of their children. Finally, she concluded that he was not going to live up to his agreement and filed the criminal complaint indicated above.

Petitioner was arrested in The Dalles, Oregon, and was held for some nine days without having been informed that he "has the right to demand legal counsel." See Section 26-2610, Ore. Comp. Laws, set out hereafter. After signing a written "waiver of extradition" four days after arrest, by which he sought to exonerate the Oregon Sheriff and his deputies from any responsibility, he was brought to Logan, Utah, and there arraigned and when brought up for trial entered a plea of guilty to the offense charged. At his arraignment and at the time of trial, he was informed of his right to counsel by the committing magistrate and also by the trial judge but stated that he did not care for counsel. The record is not very clear as to whether or not he knew that counsel could be appointed for him or whether he thought that to have counsel it was necessary for him to employ counsel. The court imposed a sentence upon him of 18 months in the Utah Prison but suspended the sentence, and, with his consent, placed him on probation and secured a job for him on a dairy ranch. Subsequently, he was brought into the court charged with having violated his probation by giving up the dairy job contrary to his agreement in

court. He claimed that he gave up the dairy job by reason of transportation difficulties. He did get other work and made some payments to his wife, but not in the manner provided by the court upon his probation. The court found that he had violated his probation and sent him to prison upon the sentence previously imposed.

He submitted a petition for Writ of Habeas Corpus, and in view of the importance of the issue, and the fact that plaintiff is impecunious, counsel was appointed to represent him and the hearing upon this petition followed. Counsel is to be commended for the merit of the work he performed.

Plaintiff's wife, before their marriage lived in Utah. She met plaintiff while he was a patient in an Army Hospital in Utah. After his convalescence, he went to Oregon, his home, and she went to Oregon to marry him. They were married there in September 1944, and lived there until the events that are the foundation of this proceeding.

Issue Number (1), was a crime committed in Utah?

The authorities upon this question are divided. One line of authorities stresses the points that the state in which the charge is filed has no power to provide rules of conduct for non-residents while they are out of the state; and that to hold otherwise, would enable the wife to make the defendant guilty in any jurisdiction of her choice. The other line of authorities stresses the question of where the duty to support lies—in the state where he lives, or in the state where she lives?

In the case of *State* v. *Hopkins,* 171 La. 919, 132 So. 501, a father was charged with failing to provide for his child from January 1930 to December 1930. From January 1930 to October 1930, the father was domiciled in the state of Washington, and the balance of the time he was in Louisiana. The court upheld the charge for the time he was in

Louisiana, but had this to say as to the time he was in Washington:

"During the time that relator resided and was domiciled out of the limits of the state, the state had no jurisdiction over him and could prescribe no rule of conduct for him. And since the state could provide no rule of conduct for him, it follows that he could not be guilty of any offense against it."

See also *Commonwealth* v. *Acker,* 197 Mass. 91, 83 N. E. 312, 125 Am. St. Rep. 328; and *State* v. *Borum,* 188 La. 846, 178 So. 371. A case similar in principle, but not in facts, as it pertained to the territorial jurisdiction of an inferior court of St. Louis, Mo. is the case of *State* v. *Christopher,* Mo. App., 267 S. W. 62. The court in this case emphasized the point that if a different principle were adopted the wife could choose the jurisdiction in which to make her spouse criminally liable—no doubt the idea was that by such choice she could seek out the state which would impose the greatest penalty upon him.

In the case of *State* v. *Wellman,* 102 Kan. 503, 170 P. 1052, 1056, L. R. A. 1918D, 949, Ann. Cas. 1918D, 1006, defendant husband was charged with the crime of failure to provide during a period he was living in Missouri, while his wife and children were living in Kansas. He contended she took the children to Kansas without his consent. The court had this to say:

"We think that whether the defendant is answerable to the Kansas courts depends upon whether he owed this state a duty to support his children while they were here with their mother. Although he was divorced from her, they were still his children, and except for special circumstances he was under an obligation to support them. If they had been wrongfully taken by her from his home, where he was ready to care for them, doubtless he would owe no duty to provide for them at the place where she detained them. The statute covers such a situation by penalizing nonsupport only when it is 'without lawful excuse'. But if through the misconduct of the defendant it became necessary for the mother to remove them from his control, he would not be thereby relieved from his obligation to provide for them. What the fact was in this regard was one of the matters involved in the determination of his guilt or innocence. It

was shown, however, that in an action to which he was a party, and in which personal jurisdiction over him had been acquired by the service of summons, the district court of Douglas county (Kansas) had awarded the custody of the children to his divorced wife on the ground that he was not a fit person to care for them, and had specifically charged him with the duty of providing for their support. Whatever might have been the situation otherwise, the decree of the court afforded a basis for finding that the defendant was under a legal duty to provide for them while they were with their mother in this state. The omission to perform this duty occurred here. The defendant is not being prosecuted for any wrongful behavior which resulted in his wife and children leaving him; such misconduct, if it occurred, could not be a violation of a Kansas statute, but might bring about a condition under which the defendant was under an affirmative obligation to act, and by merely remaining passive might become a violator of our laws. He is under prosecution for his disobedience of the statute which took place between November 10, 1916, and February 10, 1917, by his then neglecting and refusing to provide for the support of his children. If he had sent his wife and children into Kansas, it would hardly be doubted that he became responsible for their care here. If as a result of his wrongdoing they were obliged to leave him and seek refuge elsewhere, the circumstance that they found shelter in a state which undertakes to punish the neglect of parental duty under such circumstances, when they might have chosen one having a different policy in that regard, imposes upon him no hardship of which he has any standing to complain. Their being here was not due to his deliberate choice, but according to the state's theory it was the result of his voluntary misconduct."

This case discusses at length the cases holding the contrary. The Kansas statute and the Utah statute pertaining to failure to provide are very much alike. Compare the following quotations:

### Section 103-13-1, U. C. A. 1943:

"Any person who, without just cause, deserts or willfully neglects or refuses to provide for the support and maintenance of his wife in destitute or necessitous circumstances, and any person who, without just excuse, deserts or willfully neglects or refuses to provide for the support and maintenance of his or her minor child or children, under the age of sixteen years, in destitute or necessitous circumstances is guilty of a felony, and shall be punished by imprisonment in the state prison at hard labor for a period of not to exceed eighteen months; * * *."

Section 21-442, General Statutes, Kansas Annotated, 1935:

"That any husband who shall, without just cause, desert or neglect or refuse to provide for the support and maintenance of his wife in destitute or necessitous circumstances; or any parent who shall, without lawful excuse, desert or neglect or refuse to provide for the support and maintenance of his or her child or children under the age of sixteen years in destitute or necessitous circumstances, shall be guilty of a crime and, on conviction thereof, shall be punished by imprisonment in the reformatory, or penitentiary, at hard labor, not exceeding two years."

The following quotation is taken from *In re Poage*, 87 Ohio St. 72, 100 N. E. 125, 128:

"It is sufficient to say that it must at least appear either that he has brought, or compelled them to come into this state and then abandoned them, or that having been brought into this state by others, even against his will, they were then abandoned and permitted to become homeless and unprovided for. Clearly, in such case it would be the duty of the father to assert his legal right to their care and custody, and provide them with a home, food, shelter, and clothing, and his failure to do so would be an offense against our laws. This legislation is for the benefit of the child. It is passed for the purpose of enforcing the natural duties of parents to their children. This duty is owing to the child wherever the parent entitled to its control and custody places it, or wherever, in disregard of his parental duty and obligation, he permits it to remain unprovided for. So that citizens of another state cannot permit their children to become objects of charity in this state and defend against a prosecution under our laws to compel parents to provide for their minor children by the plea that they are not citizens of this state; but where such child is brought into this state against the will and consent of the parent and is provided with a suitable home, food, shelter, and clothing by those responsible for bringing it into the state, or by others procured by them to furnish the same, it is then no concern of our state and no offense against our laws."

See also: *Ex Parte Heath*, 87 Mont. 370, 287 P. 636. Several cases discuss these principles in conjunction with the question of venue as between counties of a state. See cases cited in *Re Fowles*, 89 Kan. 430, 131 P. 598, 47 L. R. A., N. S., 227; *In Re Price*, 168 Mich. 527, 134 N. W. 721, Ann. Cas. 1913C, 594.

It seems reasonable to say that if the child or the wife is in a particular state with the consent of the father or husband, or due to his misconduct, then his duty ▮ to support them lies in the state where they are so located.

In the present case the wife and children left petitioner with his consent, and with his knowledge that they were going to another state.

Delaware recognizes by specific statute the duty to support to exist in the county where the wife and children reside. As a result, the court in that state refused to permit a conviction of a defendant for failure to support his wife and children, in vew of the fact that the wife had established residence in Pennsylvania. *Sweetman* v. *State*, 4 W. W. Harr., Del. 329, 152 A. 588. But see the case of *People* v. *Spiegel*, 220 Ill. App. 129.

We are of the opinion that the better rule is this: The husband may be charged with the offense of failure to provide in the state in which he has permitted his wife or children to live, or in which his misconduct has induced them to seek refuge. We express no opinion ▬ upon what should be the ruling if the wife's selection of a particular state for residence was merely because she could cause him greater difficulty under its criminal statutes nor do we express any opinion as to whether or not he is guilty of a crime in both states. We have no such issue here. Even though it be concluded that petitioner did not acquiesce in his wife coming to Utah from Idaho, it was a very natural place for her to come when she did not receive support from him, as it was her former home.

It seems clear from the authorities cited that petitioner would not be criminally liable in Utah for the nonsupport that occurred while his wife was in Idaho, but as failure to provide is a continuing offense, the courts of this state have jurisdiction of that part of the failure to provide that

was charged to have occurred between December 1947 and March 1948—the time the wife and children were in Utah.

Upon the subject generally of the necessity of an accused's residence or presence in the state where an offense is charged to have taken place, see 33 L. R. A., N. S., 331.

Issue Number (2), was there due process in arresting and extraditing the plaintiff?

Plaintiff attacks this question from two angles: That he was not a fugitive from justice and therefore to extradite him was violative of his constitutional rights; and that he was not afforded the benefit of counsel as required by the Constitution and by the Oregon Extradition Statutes.

Little need be said of the first point, as Oregon has the provision in its extradition laws which allows extradition of persons who commit crimes in another state even though present in Oregon while committing the crime. Section 26-2606, Oregon Compiled Laws Annotated (Vol. 3). The constitutionality of such a statute has been recognized. See annotation 151 A. L. R. 239. Our Code section upon the same subject is Section 105-56-32, U. C. A. 1943.

Section 26-2610, Oregon Compiled Laws Annotated (Vol. 3), pertaining to extradition provides:

"No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he has been informed of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand legal counsel; and if the prisoner, his friends, or counsel shall state that he or they desire to test the legality of the arrest, the prisoner shall be taken forthwith before a judge of a court of record in this state, who shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. * * *"

We have a comparable statute: Section 105-56-36, U. C. A. 1943. In our statute, however, the wording is that he

be taken before a judge of a court of record to receive the information about his rights. In Oregon it provides that he be taken before the judge if he or his friends desire to contest the proceedings. Our Section 105-56-36, U. C. A. 1943, reads:

"No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state who shall inform him of the demand made for his surrender and of the crime with which he is charged and that he has the right to demand and procure legal counsel and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.   *   *   *"

The violation of Section 26-2610 of the Oregon laws (above) is used by plaintiff to attempt to bring the case within the decision of *McNabb* v. *United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, and the recent case of *Upshaw* v. *United States,* 1948, 335 U. S. 410, 69 S. Ct. 170. These cases however are not in line with plaintiff's contention. They deal with the use of confessions and admissions obtained by an abuse of the rules of criminal procedure requiring that an accused be taken before the nearest available committing magistrate. The *McNabb* case cites cases where, upon constitutional grounds, such a conviction was set aside: *Ex parte Bollman and Swartwout,* 4 Cranch 75, 130-131, 2 L. Ed. 554; *United States* v. *Palmer,* 3 Wheat. 610, 643-644, 4 L. Ed. 471; *United States* v. *Furlong,* 5 Wheat. 184, 199, 5 L. Ed. 64; *United States* v. *Gooding,* 12 Wheat. 460, 468-470, 6 L. Ed. 693; *United States* v. *Wood,* 14 Pet. 430, 10 L. Ed. 527; *United States* v. *Murphy,* 16 Pet. 203, 10 L. Ed. 937; *Funk* v. *United States,* 290 U. S. 371, 54 S. Ct. 212, 78 L. Ed. 369, 93 A. L. R. 1136; *Wolfle* v. *United States,* 291 U. S. 7, 54 S. Ct. 279, 78 L. Ed. 617. The present case is not one in which a conviction was obtained upon improperly obtained evidence. The only matter of that nature in question, if one is in question by reason of the incarcera-

tion of plaintiff nine days without benefit of counsel or without taking him before a judge, is the validity of the written "Waiver" of his rights as to the Oregon officers upon his extradition. That does not prejudically affect the merits of the offense with which he is charged. See: 146 A. L. R. 425 (7).

This writ was sought after judgment and sentence founded upon a plea of guilty and entered after two different Utah judges had advised plaintiff of his right to counsel. The offense charged in this case was failure to support, and it appears quite evident from the statements of plaintiff that he knew the nature of his offense—that of failing to support his wife and children. He readily admitted it. It does not appear that such admission was the result of any incarceration without benefit of counsel. At the time he admitted the offense he was away from the control of the officers who had failed to afford him the benefit of counsel and advice in Oregon. It does not appear that anything they did or said influenced his admissions, or evidence in the case in Utah. Furthermore, he seemed satisfied with results until he was found to have violated his probation and was sent to prison. We find nothing in the record that indicates the retention in jail in Oregon prejudiced him upon the merits of his case in the trial in Utah. That the writ of Habeas Corpus will not protect him under the circumstances of this case see: *Ex parte Davis*, 51 Tex. Cr. R. 608, 103 S. W. 891, 12 L. R. A., N. S. 225 and annotation, 14 Ann. Cas. 522. Attention is invited to the discussion in the case of *Lascelles* v. *Georgia*, 148 U. S. 537, 13 S. Ct. 687, 37 L. Ed. 549. An excellent annotation on this subject is found in 165 A. L. R. 947, where all phases of the problem are discussed.

Plaintiff is denied his release from custody. The writ is dismissed.

WADE, WOLFE, LATIMER, and McDONOUGH, JJ., concur.