STATE v. HOWARD SEABOY TICKLE.

(Filed 23 September, 1953.)

**1. Criminal Law § 12a—**

A court must have jurisdiction of the subject matter and of the person of defendant in order to render a valid judgment in a criminal prosecution.

**2. Same—**

A nonresident voluntarily entered this State and was arrested here for reckless driving and hunting without a license. While in jail, he was arrested on the warrant in this case, and was present in person during his trial. *Held:* The court had jurisdiction of the person of defendant.

**3. Criminal Law § 12b—**

An act to be punishable as a crime in this State must be an act committed here and against this sovereignty.

**4. Same: Bastards § 1—Offense of willful failure to support illegitimate child may be committed in this State by out-of-state defendant.**

Defendant, a resident of another state, was charged with the willful failure and refusal to support his illegitimate child which he had begotten upon the body of prosecutrix in such other state. The mother moved to this State before the child was born, and the mother and child have continued to reside here since its birth. Prosecutrix demanded by registered letter that defendant contribute to the support of the child, and defendant made no contention that he had provided any support for the child. *Held:* The offense of willful failure and refusal to support the child was committed in this State, G.S. 49-2, G.S. 49-3, and defendant was constructively in this State when the offense was committed, since he had voluntarily set in motion the chain of circumstances resulting in the commission of the offense here, and therefore our State court has jurisdiction of the offense.

**5. Criminal Law § 52a (8)—**

Motion for nonsuit at the close of the State's evidence is waived when the defendant thereafter introduces evidence.

**6. Indictment § 9—**

It is not necessary that an indictment for a statutory offense follow the language of the statute verbatim, but it is sufficient if it substantially follows the words of the statute.

APPEAL by defendant from *Godwin, Special J.,* at February Special Term 1953. CASWELL.

Criminal prosecution upon a bill of indictment charging that the defendant on 25 December 1951 at and in Caswell County after notice of paternity and demand for support did unlawfully and willfully refuse to provide for the support of his illegitimate child begotten upon the body of Ruby Elizabeth Hamlett, contrary to the statute, etc. G.S. 49-2.

The State's evidence is summarized below: Ruby Elizabeth Hamlett, a resident of Caswell County, went to Danville, Virginia, to work in 1947, returning to her home every week or two. She met the defendant in Danville in 1949. He was a resident of Virginia, and has never lived in North Carolina. After she met the defendant they began going together. About October 1950 she began having sexual intercourse with the defendant, and it continued at frequent intervals until she had been pregnant two months. All the acts of intercourse occurred in Virginia.

In March 1951 she returned to her Aunt's home in Caswell County, and there on 17 June 1951 gave birth to a bastard. That the defendant is the father of her bastard, and admitted to several people that he was father of her bastard.

Her testimony as to her returning to Caswell County is as follows: "I told him"—the defendant—"I was coming out in the country and stay; no, I didn't tell him where; I told him that in February 1951 before I came over here. He hadn't said anything to me about coming over to Caswell County, hadn't mentioned the matter one way or the other to me; he had nothing to do with my coming over here to have the baby, that's right; how was I going to stay in town, I didn't have any money or couldn't work; I had to come to the country." Later, on redirect examination, she testified: "After I became pregnant and about the time I got ready to come back to Caswell County, Tickle knew that I was coming back to Caswell County, I told him I was coming out in the country to my aunt's and stay; I guess he understood the reason why I had to come— he didn't say anything about he didn't or he did; he did not undertake to give me any help by way of keeping me over there or offering me another home . . . the only place I had to return was Caswell County."

About two weeks after the child's birth she moved with her child from her aunt's to her parents' home in Caswell County, and she and her child have lived there since. Her bastard has been sickly. Her parents have paid the child's medical and doctor's bills, and supported the child. The

defendant furnished no support. During the trial Mr. Dalton, the defendant's lawyer, in response to a question of the court stated the defendant made no contention that he had furnished support. Since the bastard's birth Ruby Elizabeth Hamlett has not been able to hold a job; she has not been well—she has fainting spells.

On 13 July 1951 she sent the defendant a registered letter notifying him "our child, Donna Kay Hamlett, was born 17 June 1951 and is getting along nicely," and asking him to meet her and "make arrangements about the support of our daughter." She received the . return receipt of this registered letter dated 17 July 1951 signed by the defendant. She received no reply from the defendant.

On 20 July 1951 she swore out a warrant against the defendant in Caswell County charging him on 17 June 1951 at and in said county with unlawfully and willfully neglecting and refusing to support his bastard child. The State of Virginia declined extradition.

About 19 December 1951 the defendant was arrested in Caswell County for reckless driving and hunting without a license. While in jail he was arrested on the warrant in this case. On the warrant in this case he was tried and convicted in the Recorder's Court of Caswell County. From the judgment imposed he appealed to the Superior Court. In the Superior Court he was tried and convicted upon a bill of indictment.

Verdict: The jury answered the issue "is the defendant the father of Donna Kay Hamlett, illegitimate child of Ruby Hamlett," Yes; and the issue "has the defendant wilfully neglected or refused to provide support for the said child," Yes, and found the defendant guilty.

From the judgment imposed thereon, the defendant appeals, assigning error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Gerald F. White, Member of Staff, for the State.*
*William Reid Dalton for defendant, appellant.*

PARKER, J. The defendant in this Court made a motion to dismiss for want of jurisdiction.

For a crime to be prosecuted and judgment given it is necessary that the trial court have jurisdiction of the subject matter and of the person of the defendant. Jurisdiction of the subject matter is derived from the law. *S. v. Oliver,* 186 N.C. 329, 119 S.E. 370; 10 Am. Jur., p. 917.

The defendant came voluntarily into Caswell County, this State, and was arrested for reckless driving, hunting without a license, and then on the warrant in this case. The defendant was present in person during his trial in the Recorder's Court and the Superior Court. Those courts had jurisdiction of the person of the defendant. *S. v. Oliver, supra;*

*Pettibone v. Nichols,* 203 U.S. 192, 51 L. Ed. 148; 22 C.J.S. Crim. Law, Sec. 144. .

The bastard was begotten in Virginia, where her mother domiciled in this State, was working. The bastard's father was domiciled in Virginia, where he has always lived. The mother having no money and being unable to work about three and one-half months before the bastard's birth returned to Caswell County, where she was domiciled, and gave birth to the bastard. Since then the bastard and her mother have lived in Caswell County, where they are domiciled. The court here had jurisdiction over the person of the defendant. Did the court have jurisdiction over the subject matter charged in the indictment?

Our bastardy statute applies whether the child shall have been begotten or born within or without the State, provided the child to be supported is a *bona fide* resident of this State at the time of the institution of the action for support of the child. G.S. 49-3.

An act to be punishable as a crime in this State must be an act committed here and against this sovereignty. *S. v. Cutshall,* 110 N.C. 538, 15 S.E. 261, 16 L.R.A. 130; *S. v. Jones,* 227 N.C. 94, 40 S.E. 2d 700; *Commonwealth v. Lanoue,* 326 Mass. 559, 95 N.E. 2d 925.

But as to some crimes the physical presence of the accused at the place where the crime is committed is not essential to his guilt is well settled. "The constitutional requirement is that the *crime* shall be tried in the state and district where committed; not necessarily in the state or district where the party committing it happened to be at the time." *Burton v. U. S.,* 202 U.S. 344, 50 L. Ed. 1057; *S. v. Johnson,* 212 N.C. 566, p. 570, 194 S.E. 319.

"There may be a constructive presence in a jurisdiction, distinct from a personal presence, by which a crime may be consummated, and a person beyond the limits of a state or country putting in operation a force which produces a result constituting a crime within those limits, is as liable to indictment and punishment, if jurisdiction can be obtained of his person, as if he had been within the limits of the state or country when the crime was committed." 22 C.J.S., Crim. Law, p. 219, citing numerous cases.

At common law the father of a bastard child is under no legal obligation to support it. 7 Am. Jur., p. 673. However, the father of a bastard is under a natural and moral duty to support his bastard. *Kimborough v. Davis,* 16 N.C. 71; *Burton v. Belvin,* 142 N.C. 151, 55 S.E. 71; *Sanders v. Sanders,* 167 N.C. 319, 83 S.E. 490; 10 C.J.S., p. 86. Recognizing that the common law rule is not adapted to the public opinion of a modern Christian state and that a poor innocent child should not be suffered to famish as a victim of his father's lust, unless supported at the public charge or by charity, statutes in most states impose on the father the legal duty to support his bastard child. 10 C.J.S., p. 86. G.S. 49-2

makes this moral obligation of the father, legal and enforceable, and we see no good reason why our courts should not enforce it in this case, where the father is subject to our jurisdiction. *Roy v. Poulin,* 105 Me. 411, 74 A. 923.

We have found no case embodying the exact facts of this case, nor have counsel for the State or the defendant in their briefs referred us to any such case.

In Am. Law Inst. Restatement, Conflict of Laws, p. 545, it is stated: "Bastardy Proceedings at Domicil of Father. A statute of the state of domicil of the father of a minor bastard child will be there applied to compel him to contribute to the support of the child, irrespective of where the mother is domiciled, unless the statute provides otherwise. Comment: a. Rationale. Whether a bastardy statute is criminal or civil in nature, it represents the exercise of the state's police power either to punish misconduct or to impose the onus of supporting a child upon its natural parent to prevent the child becoming a dependent upon society."

The same work on p. 546 states: "Bastardy Proceedings at Domicil of Mother. A statute of the state of domicil of the mother of a minor bastard child will be there applied, if a court there obtains jurisdiction over the father, to compel him to contribute to the support of the child, unless the statute provides otherwise."

The above statement of the law is copied almost verbatim in 7 Am. Jur., Bastards, p. 684.

The prosecution in this action is based on our statute. Whether under the Virginia law a father is required or not required to support his bastard child is not involved.

In 1 R.I. 356 *Chief Justice Greene* wrote these words which have become classic: "The law is progressive and expansive, adapting itself to the new relations and interests which are constantly springing up in the progress of society. But this progress must be by analogy to what is already settled."

Where bastardy statutes do not expressly provide that the proceedings shall be brought by a woman resident within the state, the question has often arisen whether such a statute may be invoked where the father is domiciled in the state, and the mother and child are nonresidents. The courts have taken two views of the question. The rule in a majority of jurisdictions is that a nonresident of the state may institute a prosecution under the statute. These decisions are based on the reason that the principal object of such a statute is to convert the moral obligation of the father into a legal duty by compelling him to assist the mother in support of the child. 18 Ann. Cas. 574, note, where numerous cases are cited. 7 Am. Jur., Bastards, Sec. 85, says this seems to be the better view "the bastardy proceedings being considered transitory in their nature and the

father subject to suit in the county of his residence. A sound reason for this view is that if the rule were otherwise, there might be no remedy where the father took care to cross state lines at the proper time or where the complainant and her child were, by force of circumstances, compelled to reside outside the state." In *S. v. Etter*, 24 S.D. 636, 124 N.W. 957, 140 Am. S. R. 801—a bastardy case—the Court said: "The defendant is a resident of this state. It would be unreasonable to hold that he was not amenable to our laws because from distress the complainant sought shelter in her father's home in another state—the only place for her to go—outside the almshouse." The minority rule is that a nonresident cannot maintain the action, and the rationale of those cases is that the primary purpose of the statute is to prevent the child becoming a charge upon the public. 18 Ann. Cas. 575, citing cases; 7 Am. Jur., Sec. 85.

In *S. v. Wellman*, 102 Kan. 503, 170 P. 1052, the defendant was convicted of failing to support his child under the age of 16. The period within which the defendant was charged to have been guilty of such omission extended from 10 November 1916 to 10 February 1917. During that time and until his arrest he was not in Kansas, but was living in Missouri, and his three children with their mother, his divorced wife, in Kansas. Because of his ill treatment his wife left him in Missouri, and went to Kansas. In February 1916, in Kansas, she divorced her husband, and the court awarded her the custody of the children. In affirming the judgment based upon his conviction the Court said in speaking of the defendant's legal duty to provide for his children while they were with their mother in Kansas: "The omission to perform this duty occurred here. The defendant is not being prosecuted for any wrongful behavior which resulted in his wife and children leaving him; such misconduct, if it occurred, could not be a violation of a Kansas statute, but might bring about a condition under which the defendant was under an affirmative obligation to act, and by merely remaining passive might become a violator of our laws. He is under prosecution for his disobedience of the statute which took place between November 10, 1916 and February 10, 1917, by his then neglecting and refusing to provide for the support of his children. If he had sent his wife and children into Kansas, it would hardly be doubted that he became responsible for their care here. If as a result of his wrongdoing they were obliged to leave him and seek refuge elsewhere, the circumstance that they found shelter in a state which undertakes to punish the neglect of parental duty under such circumstances, when they might have chosen one having a different policy in that regard, imposes upon him no hardship of which he has any standing to complain. Their being here was not due to his deliberate choice, but according to the state's theory it was the result of his voluntary misconduct."

In *Osborn v. Harris,* 115 Utah 204, 203 P. 2d 917, the matter was before the Court upon a writ of *habeas corpus* to secure the defendant's release from prison upon a conviction for failing to support his wife and children. This issue was raised: Was an offense committed in the State of Utah? In denying the writ the court decided that the defendant could be convicted in Utah where he permitted his wife and children to live, or in which his misconduct had induced them to seek refuge, though he resided in a different state. The Court after stating that the authorities are divided, and reviewing or citing cases from Louisiana, Massachusetts, Missouri, Kansas, Ohio, Montana, Delaware, Illinois and Michigan says: "We are of the opinion that the better rule is this: the husband may be charged with the offense of failure to provide in the state in which he has permitted his wife or children to live, or in which his misconduct has induced them to seek refuge . . . It seems clear from the authorities cited that petitioner would not be criminally liable in Utah for the non-support that occurred while his wife was in Idaho, but as failure to pro-vide is a continuing offense, the courts of this state have jurisdiction of that part of the failure to provide that was charged to have occurred between December 1947 and March 1948—the time the wife and children were in Utah."

In 27 Am. Jur., Husband and Wife, Sec. 444, it is written: "Where he (the husband) sends the wife or child to another place, he is properly indicted and tried for the offense in the jurisdiction where the wife or child becomes dependent, regardless of his non-residence, for that is the place where the duty of support should be discharged, and consequently the place where the offense of failure to support is committed."

We realize that the cases of a husband's failure to support his wife or legitimate child do not present the exact facts before us, but they are cited by analogy.

The defendant got the prosecutrix pregnant. She testified after she became pregnant the defendant knew she was going back to her aunt's in Caswell County. He did not undertake to give her any help. She didn't have any money, and couldn't work—and in her sore distress the only place she had to return to was Caswell County, the place of her domicil, and where she and her child have been domiciled since. Caswell County is the place where the defendant's duty to support his bastard child should be discharged, and the place where the failure to support has been committed.

There may be a constructive presence in a jurisdiction distinct from a personal appearance by which a crime may be consummated. There is a constructive presence of the defendant in this jurisdiction for by his lust in Virginia he begot a bastard child upon the body of Ruby Elizabeth Hamlett, and thereby put into operation a force which produced the result

of his bastard child and her mother being domiciled in this State from the date of the child's birth until now, and further produced the result of his willful failure to support his bastard child in North Carolina, which is a crime under our law, G.S. 49-2, and our courts have jurisdiction over the defendant's person. *U. S. v. Steinberg*, C.C.A.N.Y., 62 F. 2d 77; *certiorari* denied *Steinberg v. U. S.*, 53 S. Ct. 526, 289 U.S. 729, 77 L. Ed. 1478; *People v. Ware*, 67 Cal. App. 81, 226 P. 956; *Updike v. People*, 92 Colo. 125, 18 P. 2d 472; *S. v. Vetrano*, 121 Me. 368, 117 A. 460; *Lumber Co. v. R. R.*, 78 N.H. 553, 103 A. 263; *Burton v. U. S., supra; Travelers Health Ass'n. v. Virginia*, 188 Va. 877, 51 S.E. 2d 263, Affd. 339 U.S. 643, 94 L. Ed. 1154; 22 C.J.S., Crim. Law, p. 219. The defendant was present *in personam* in this jurisdiction during his trial and with counsel, and the maintenance of this action against him does not offend against "traditional notions of fair play and substantial justice," and due process. *Travelers Health Ass'n. v. Virginia, supra.*

*State ex rel. Gildar v. Kriss*, 191 Md. 568, 62 A. 2d 568, was a *habeas corpus* proceeding by the State of Maryland, on the relation of Sam Gildar, for release from the custody of Henry J. Kriss, Captain of Detectives of Baltimore, under an extradition warrant. From an order remanding petitioner to respondent's custody, petitioner appeals. The case presented questions as to the constitutionality and application of Section 18 of the Uniform Criminal Extradition Act, which provides extradition of persons not present in demanding state at time of commission of crime. The petitioner was in custody, pursuant to a warrant of the Governor of Maryland, to be delivered to an agent of the State of North Carolina. From a North Carolina warrant and also from affidavits, which were parts of the demand of the Governor of North Carolina to the Governor of Maryland, it clearly appears that the warrant charged the petitioner and others on or about 23 July 1947 in Guilford County, North Carolina, with conspiring to violate the laws of North Carolina by engaging and carrying on the business of transporting, handling and dealing in spirituous liquors, wholesale and retail, and in carrying out said conspiracy, they, on 21 July 1947, purchased in Baltimore, Md., 215 cases of liquor and transported them by truck from Baltimore, Md., into Guilford County, North Carolina, for the purpose of sale contrary to law, and have transported and sold to various bootleggers in North Carolina from 19 February 1947 to 31 July 1947 a total of 54,426 cases, all in flagrant violation of the North Carolina laws. One of the affidavits alleges that petitioner was not present in North Carolina at the time of the commission of the crime of which he is charged and has not fled from said State, but while in the State of Maryland entered into a conspiracy with other defendants in North Carolina intentionally resulting in the commission of a series of crimes in North Carolina. The Maryland Court in affirm-

ing the order remanding petitioner to respondent's custody quoted this language in *Strassheim v. Daily,* 221 U.S. 280, 285, 55 L. Ed. 735 : "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."

In respect to a person committing a crime in a state where he was not physically present, see the statement in *S. v. Hall,* 114 N.C. 909, 19 S.E. 602; *S. v. Patterson,* 134 N.C. 612, 47 S.E. 808; *S. v. Clayton,* 138 N.C. 732, 50 S.E. 866.

The defendant's motion to dismiss the case for want of jurisdiction is overruled. The defendant's assignment of error No. 2 based in large part upon substantially the same ground is overruled. There was plenary evidence to carry the case to the jury. It appears in the record that during the court's charge, the court inquired of the defendant's lawyer if there was any contention made by the defendant that he had supported the child, and the defendant's lawyer replied No. The defendant's assignment of error that all the evidence shows the defendant is not guilty is overruled.

The defendant's assignment of error No. 1 based upon his motion for judgment of nonsuit made at the close of the State's evidence is untenable for the defendant introduced evidence.

The defendant was tried under a bill of indictment. While the sufficiency of the indictment is not mentioned in the assignments of error, the defendant in his brief challenges its correctness because it does not copy verbatim the statute under which it was drawn. The indictment follows substantially the words of the statute and is sufficient. *S. v. Maslin,* 195 N.C. 537, 143 S.E. 3; *S. v. Randolph,* 228 N.C. 228, 45 S.E. 2d 132. The cases relied upon by the defendant *S. v. Tyson,* 208 N.C. 231, 180 S.E. 85; and *S. v. Thompson,* 233 N.C. 345, 64 S.E. 2d 157, are not in point.

The defendant in his brief contends G.S. 49-2 and 49-3 are unconstitutional. This Court has decided that question against the defendant's contention in *S. v. Spillman,* 210 N.C. 271, 186 S.E. 322.

The defendant's other assignments of error have been examined, and are overruled.

There is no exception to the charge of the court

In the trial in the court below we find

No error.