STATE of Minnesota, Appellant,

v.

Gilbert Levi PHILLIPS, Defendant,

Bartsh Bail Bonds, Respondent.

No. C6–97–724.

Supreme Court of Minnesota.

Dec. 10, 1998.

---

6. *State v. Lund,* 277 Minn. 90, 92, 151 N.W.2d 769, 771 (1967).

7. *See State ex rel. Terry v. Tahash,* 278 Minn. 100, 103, 153 N.W.2d 227, 229 (1967).

Roger S. Van Heel, Stearns County Attorney, Richard J. May, Assistant Stearns County Attorney, St. Cloud, Hubert H. Hum-

phrey, III, Attorney General, St. Paul, for Appellant.

Michael J. Michalski, St. Cloud, for Respondent.

# O P I N I O N

PAUL H. ANDERSON, Justice.

Gilbert Levi Phillips fled North Dakota to evade prosecution for felony theft of property. Phillips was subsequently arrested in Minnesota, where he was informed that North Dakota sought his extradition. Phillips challenged extradition, thereby requiring that a governor's rendition warrant be issued for his arrest. He was then admitted to bail and posted a $10,000 appearance bond through respondent Bartsh Bail Bonds. Within 30 days of this first Minnesota court appearance, Phillips purported to waive the 30–day time "factor" applicable to his arrest under a governor's rendition warrant. Almost nine months after his first court appearance, Phillips waived his right to challenge extradition. No governor's rendition warrant was served upon Phillips before he waived his extradition rights.

After Phillips waived his right to challenge extradition, the Minnesota district court directed him to return voluntarily to North Dakota to face the charges pending against him there and to then return to Minnesota to face charges pending against him here. Phillips subsequently fled both jurisdictions. The district court then ordered Phillips' $10,000 appearance bond forfeited. The Minnesota Court of Appeals reversed the district court and ordered the bond reinstated and discharged. On appeal to this court, the state takes issue with the court of appeals' conclusion that, after Phillips waived extradition, the district court did not have the discretion to continue Phillips' bond and to order him to return voluntarily to North Dakota. We affirm the court of appeals on different grounds and remand the case to the district court for reinstatement and discharge of the bond.

On June 28, 1995, a magistrate in Cass County, North Dakota issued a warrant for the arrest of Gilbert Levi Phillips. Phillips had been charged in Cass County with two felony counts of theft of property. At about this same period of time in Minnesota, the Stearns County District Court issued a warrant for Phillips' arrest because of his failure to appear in that county to answer to charges of driving after cancellation of his license. Phillips was eventually arrested in Morrison County, Minnesota, and, on October 31, 1995, Morrison County authorities transferred him to the Stearns County jail. The next day, the Cass County Sheriff notified officials at the Stearns County jail that Cass County intended to extradite Phillips to North Dakota. In the same communication, the Cass County Sheriff requested that Stearns County set a $10,000 "cash only" bond for Phillips and asked that Stearns County keep Cass County informed of Phillips' intentions regarding waiver of his right to challenge extradition.

That same day, November 1, 1995, Phillips made his first appearance on the extradition matter in Stearns County District Court. At this appearance, Phillips indicated that he wished to challenge extradition, thereby requiring that a governor's rendition warrant be issued for his arrest. The court ordered that Phillips be committed to jail unless he posted $10,000 bail, cash or bond, and set the next hearing date on the extradition proceedings for November 30, 1995. The next day, Phillips posted a $10,000 appearance bond through respondent Bartsh Bail Bonds.

On November 24, 1995, Phillips, through his attorney, filed a letter requesting that the November 30 hearing be rescheduled. In this letter, Phillips' attorney stated, "Mr. Phillips waives the 30–day time factor" applicable to the extradition proceedings. The record does not reflect any action in response to this request, but it appears that the court granted the request. Phillips remained free on the same $10,000 appearance bond.

Upon written demand by the governor of North Dakota to extradite Phillips, Minnesota's governor issued a rendition warrant on November 30, 1995, authorizing Phillips' arrest and delivery to North Dakota authori-

ties. The warrant was addressed to the Stearns County Sheriff and copies were sent to the Stearns County Attorney, the Cass County Sheriff, the Minnesota Attorney General, and the North Dakota Attorney General. There is no evidence in the record that this warrant was ever served on Phillips.

The next reference in the record regarding the extradition proceedings appears on February 29, 1996, when the Stearns County Attorney sent a letter to Phillips' attorney confirming an understanding between them that they would jointly request that any extradition proceeding be continued until the Minnesota charges against Phillips were resolved. With the exception of an April 2, 1996 comment in the record that "the extradition [was] just tracking with the [Minnesota charges]," the record indicates no further action on the extradition proceedings until July 22, 1996, when the Stearns County District Court issued a warrant for Phillips' arrest. The court issued the warrant because Phillips had failed to appear as promised on or before July 17, 1996. The court cancelled this warrant on July 26, 1996, when Phillips appeared voluntarily in Stearns County to enter a guilty plea to the charge of driving after cancellation of his license and for further action on the extradition proceedings. At this hearing, Phillips waived his right to challenge extradition.

After Phillips waived his right to challenge extradition, the district court directed him (1) to return voluntarily to North Dakota on or before September 9, 1996 to answer to the North Dakota charges, and (2) to appear in Stearns County on September 9, 1996 on charges of aggravated DWI and receiving stolen property. The court also continued Phillips' $10,000 appearance bond. The court did not notify Bartsh that the bond had been continued.

Phillips failed to appear in Cass County on or before September 9, 1996.[1] He also failed to appear in Stearns County on September 9, 1996. After Phillips failed to appear in Stearns County, the county attorney requested that the court reopen Phillips' extradition file and order his $10,000 appearance bond forfeited. The court granted the request and, on September 26, 1996, ordered forfeiture of the bond.

Bartsh challenged the district court's forfeiture order, arguing that the court did not have the discretion to continue Phillips' bond after he waived his right to challenge extradition. Bartsh also argued that, even if the court did have the discretion to continue Phillips' bond, the court did not have the discretion to order Phillips to return "voluntarily" to North Dakota. Additionally, Bartsh argued that the court erred when it failed to notify Bartsh that the court intended to continue Phillips' bond, thus denying Bartsh the opportunity to reevaluate its risk and decide whether it wished to continue on as surety for Phillips. The court rejected Bartsh's challenge to its forfeiture order, concluding that it did have the discretion to continue Phillips' bond and that it acted within its discretion when it ordered Phillips to return voluntarily to North Dakota.

The court of appeals reversed the district court, concluding that the district court lacked jurisdiction to admit Phillips to bail after he had signed a waiver of his extradition rights. The court reasoned that, under the Extradition Clause of the United States Constitution and the Uniform Criminal Extradition Act, Minnesota's governor was obligated to deliver Phillips to North Dakota. The court then concluded that, when Phillips was allowed to go free on bail after signing the waiver, Minnesota's governor became unable to meet his obligation to deliver Phillips to North Dakota authorities. With respect to the discharge of the bail bond, the court held that Bartsh's liability was discharged when Phillips signed the waiver because, at that time, the district court had conclusively determined that Phillips was a fugitive from North Dakota and had closed the extradition file to which the bail bond applied.

Stearns County appealed. Both Bartsh and the county briefed the issue of whether the district court had the discretion to continue Phillips' bond after he waived extradition; but neither party acknowledged that a governor's rendition warrant had been issued for Phillips' arrest nor did either party address

---

1. Phillips was subsequently apprehended in the state of Nebraska on February 28, 1997.

the procedures Minnesota authorities must follow once a governor's rendition warrant is issued. The first time this court became aware of the existence of the November 30, 1995 governor's rendition warrant was at oral argument. With the agreement of the parties, we accepted the warrant and supporting documentation into the record at oral argument.

■ The parties ask us to decide whether the district court abused its discretion when, almost nine months after his first Minnesota court appearance, Phillips waived his extradition rights and the court ordered him to return voluntarily to North Dakota and continued his bond. We do not need to reach these issues in this case. Rather, we must determine whether Phillips and his bond were discharged by operation of statute 90 days after his first appearance. More particularly, we must decide whether, under Minn. Stat. § 629.17, a bonding company is discharged from liability on an appearance bond when (1) the accused for whom the bond was posted challenges extradition, thereby requiring that a governor's warrant issue for his arrest, and (2) the warrant is issued but is not served, and the accused is not arrested within the time period allowed by statute for the commitment of the accused.

■ When a person is accused of committing a crime in one state (demanding state) and that person is subsequently arrested in another state (asylum state), the Extradition Clause of the U.S. Constitution mandates that the asylum state deliver that person (demanded person) over to the demanding state. *See* U.S. Const. art. IV, § 2, cl. 2. Full faith and credit must be given to a proper request by a demanding state for a demanded person's return. *Michigan v. Doran*, 439 U.S. 282, 288, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). The purpose of the extradition clause is to prevent some states from becoming havens for fugitives from other states and to "enable each state to bring

offenders to trial as swiftly as possible in the state where the alleged offense was committed." *Id.* at 287, 99 S.Ct. 530. The United States Supreme Court has stated that, in keeping with this purpose, "[i]nterstate extradition was intended to be a summary and mandatory executive proceeding." *Id.* at 288, 99 S.Ct. 530.

■ In an effort to streamline extradition procedures and make them uniform among the states, the National Conference of Commissioners on Uniform State Laws promulgated the Uniform Criminal Extradition Act, a set of proposed extradition procedures for states to follow. Many states, including Minnesota, have adopted the Uniform Criminal Extradition Act (UCEA).[2] *See* Minn. Stat. §§ 629.01–629.29 (1996). Asylum states which have adopted the UCEA are bound by the extradition clause and the UCEA as adopted. *See Doran*, 439 U.S. at 288–89, 99 S.Ct. 530. Unless otherwise noted, all subsequent references to the UCEA refer to the UCEA as adopted at Minn.Stat. §§ 629.01–629.29 (1996).

Under the UCEA, when a demanded person has fled a demanding state's jurisdiction and is arrested in an asylum state, that person must be taken before a judge in the asylum state. Minn.Stat. § 629.14 (1996). The judge must inform the demanded person of the charges against him in the demanding state and that the demanding state is seeking his return to face those charges. Minn.Stat. § 629.10 (1996). At that point, the demanded person must decide whether he wishes to challenge extradition or waive this right. Minn.Stat. §§ 629.15, 629.24 (1996).

If a demanded person chooses to challenge extradition, a governor's rendition warrant must be issued for his arrest. A properly issued governor's rendition warrant is the instrument by which the asylum state's governor requires that the demanded person be arrested and surrendered to authorities of the demanding state. Minn.Stat. §§ 629.07–

---

**2.** North Dakota repealed the Uniform Criminal Extradition Act in 1985 and replaced it in 1987 with the Uniform Extradition and Rendition Act (UERA). N.D. Cent.Code § 29–30.3 (1991). The UERA was promulgated in 1980 by the National Conference of Commissioners on Uniform State Laws in an effort to eliminate certain of the procedures under the Uniform Criminal Extradition Act which were perceived to be cumbersome. To date, North Dakota is the only state that has adopted the UERA.

629.08 (1996). Arrest under such a warrant gives the demanded person the right to challenge the validity of extradition by bringing a writ of habeas corpus. Minn.Stat. § 629.10 (1996). Alternatively, if a demanded person chooses to waive the formal extradition procedures, he gives up the right to issuance of a governor's rendition warrant and, therefore, the right to bring a writ of habeas corpus. Minn.Stat. § 629.24. In effect, a demanded person who waives the formal extradition procedures voluntarily submits to the criminal jurisdiction of the demanding state.

■ When a demanded person indicates that he wishes to challenge extradition, the UCEA sets forth the procedures the demanding state and the asylum state must follow to ensure that the mandates of the Extradition Clause are met and that the demanded person's due process rights are safeguarded. See State v. Hedman, 280 Minn. 69, 71, 157 N.W.2d 756, 757 (1968). Central to this case are the UCEA provisions limiting the length of time a demanded person may be held in custody while awaiting the issuance and execution of a governor's rendition warrant. See Minn.Stat. §§ 629.15, 629.17 (1996). These limitations are designed to require timely issuance and execution of the warrant and also to "prevent unreasonably lengthy periods of confinement pending completion of extradition proceedings by the demanding state." Hedman, 280 Minn. at 71, 157 N.W.2d at 757.

A demanded person may be held in jail or released on bail for up to 30 days pending issuance and execution of a governor's rendition warrant. Minn.Stat. § 629.15. Bail is available unless the crime charged in the demanding state is punishable by death or life imprisonment. Minn.Stat. § 629.16 (1996). A demanded person may be admitted to bail by bond "conditioned for the person's appearance before the judge * * * and for the person's surrender, to be arrested upon the warrant of the governor of this state." Minn.Stat. § 629.16.

■ If a demanded person is not arrested under a governor's rendition warrant within the initial period of up to 30 days from the date of arraignment, the judge in the asylum state may either discharge the demanded person or recommit him for a further period not to exceed an additional 60 days. Minn.Stat. § 629.17. If the judge recommits the demanded person for an additional period, he "may again" admit the demanded person to bail, conditioned on the demanded person's appearance and surrender, "but within a period not to exceed 60 days after the date of the new bond." Minn. Stat. § 629.17 (emphasis added). The statute provides for no further extensions. Therefore, it follows that, if a governor's rendition warrant is not issued and executed at the end of the additional time period of up to 60 days, the demanded person is discharged by operation of statute. However, when an asylum state court dismisses a fugitive complainant because extradition documents have not been received within the time limits set by Minn.Stat. §§ 629.15 and 629.17, the state is not barred from rearresting the demanded person when extradition proceedings have been completed by the demanding state and a governor's rendition warrant has been issued. See Hedman, 280 Minn. at 71, 157 N.W.2d at 757.

■ A governor's rendition warrant is prima facie evidence that all constitutional and statutory requirements for extradition have been met by the demanding state and that extradition is proper. Doran, 439 U.S. at 288–89, 99 S.Ct. 530; Cf. State v. Limberg, 274 Minn. 31, 36, 142 N.W.2d 563, 566 (1966) (recognizing that the burden is on defendant to rebut presumptive effect of governor's rendition warrant). The warrant authorizes the arrest of the demanded person and the surrender of that person to the authorities of the demanding state. Minn.Stat. § 629.08. Once a demanded person is arrested under a governor's rendition warrant, he may bring a writ of habeas corpus in the asylum state to contest his extradition. Minn.Stat. § 629.10.

In cases where a demanded person is also accused of committing crimes in the asylum state and criminal proceedings have been instituted in the asylum state, the governor of the asylum state "either may surrender the person on demand of the executive authority of another state or hold the person until the person has been tried and dis-

charged or convicted and punished in [the asylum] state." Minn.Stat. § 629.19 (1996). Typically, the asylum state's governor defers to the local prosecutor and either issues the rendition warrant with instructions to withhold its service or withholds issuance of the warrant until the prosecutor informs the governor of the outcome of the local proceedings. *See* Leslie W. Abramson, *Extradition in America: Of Uniform Acts and Governmental Discretion,* 33 Baylor L.Rev. 793, 808 (1981).[3]

In the present case, the initial 30–day time period allowed by the UCEA for Phillips' commitment pending arrest under the governor's rendition warrant began to run on November 1, 1995, the date of Phillips' arraignment. *See* Minn.Stat. §§ 629.14, 629.15. The district court set the next hearing date on Phillips' extradition proceedings for November 30, 1995, a date within 30 days of his arraignment, and set bail for Phillips' release at $10,000, cash or bond. The day after his arraignment, Phillips posted a $10,000 appearance bond through Bartsh. The bond did not state Phillips' specific appearance date, but that date—November 30, 1995— was stated in the court's release order.

It is undisputed that a governor's rendition warrant for Phillips' arrest was issued on November 30, 1995. The warrant was addressed to the Stearns County Sheriff and a copy was sent to the Stearns County Attorney. The stamp on the Stearns County Attorney's copy of the warrant, a copy of which was accepted into the record at oral argument, indicates that the Stearns County Attorney received its copy of the warrant on December 5, 1995. There is no evidence that this warrant was ever served on Phillips or that the governor instructed the local authorities not to serve the warrant.

No hearing was held on November 30, 1995. In fact, the next reference in the record to the extradition proceedings is a February 29, 1996 letter sent by the Stearns County Attorney to Phillips' attorney confirming an understanding between them that they would jointly request that any extradition proceedings be continued until the Minnesota charges against Phillips were resolved. This reference is followed by a comment made at an April 2, 1996 hearing, when an attorney with the Stearns County Attorney's office stated to the court that "the extradition is just tracking with the [Minnesota charges] so we are really not going to do anything with that today, other than waive the time limit." At no time before November 30, 1995 or at any time thereafter did the district court take action pursuant to Minn. Stat. § 629.17 to recommit Phillips or to "again take bail" for up to an additional 60 days after the date of the "new bond." This inaction on the part of the court may have served to discharge Bartsh from liability on Phillips' appearance bond 30 days after Phillips' arraignment. This conclusion finds support in the decision of at least one state. *See State v. Jones,* 709 A.2d 507 (Vt.1998) (holding that, under Vermont's version of the Uniform Criminal Extradition Act, when a demanded person complied with the conditions of his release on bail by appearing at a hearing scheduled 30 days after his initial appearance and the court failed to "again take bail," the demanded person's bond was discharged).

We note, however, that there is authority from other jurisdictions suggesting that the 30–day time limitation on commitment under the UCEA should be read less restrictively than does Vermont. *See In re Danko,* 240 Kan. 431, 731 P.2d 240 (Kan.1987) (holding that it was not reversible error to detain a defendant longer than 30 days when defendant failed to object to such detention); *Whittington v. Bray,* 200 Colo. 17, 612 P.2d 72 (Colo.1980) (holding that it was within the district court's discretion to hold defendant in jail for more than 30 days without a formal request from the county attorney); *Holcombe v. Strode,* 266 Pa.Super. 39, 402 A.2d 1067 (Pa.Super.Ct.1979) (holding that a defendant who failed to object to his incarceration of

---

**3.** We have not previously addressed the issue of whether the UCEA's time limitations on a demanded person's commitment are implicated when the governor instructs authorities to withhold service of a properly issued governor's rendition warrant. But because there is no indication in the record that the governor issued instructions to withhold service of the warrant on Phillips, we need not address this issue here.

more that 30 days was precluded from raising the argument after he was arrested under a governor's rendition warrant).

While foreign jurisdictions have not reached a consensus as to whether a demanded person and his bond are discharged when a governor's rendition warrant is not executed within the initial 30–day commitment period and no new bail is taken, these jurisdictions have consistently held that a demanded person and his bond are discharged when the demanded person is not arrested under a governor's rendition warrant within the additional 60–day commitment period. The Oklahoma Supreme Court held that a court is without authority to require a defendant's appearance 92 days after the date of his initial confinement. *Carter v. State*, 708 P.2d 1097 (Okl.1985). The Pennsylvania Superior Court held that a court cannot hold a defendant in custody for longer than the 90 days granted by the UCEA. *Coffman v. Aytch*, 238 Pa.Super. 584, 361 A.2d 652 (Pa.Super.Ct.1976). The Texas Court of Appeals held that a court is without authorization to hold defendant longer than the 90 days granted by statute. *Lanz v. State*, 815 S.W.2d 252 (Tex.App.1991). On the federal level, the Western District of Virginia held that a demanded person must be released from custody after the maximum 90–day confinement period has run. *Speaks v. Pittsylvania County*, 355 F.Supp. 1129 (W.D.Va.1973).

While the holdings from other jurisdictions are split on the consequence of compliance or noncompliance with the initial 30–day time limit, they are consistent with a conclusion that the outer limit of time for which a demanded person may be held in custody pending issuance and service of a governor's rendition warrant is the 90–day limit (initial 30 days, plus further 60 days) mandated by the UCEA. We agree with this conclusion and the result to which it leads in this case. Under the clear language of the UCEA and the facts of this case, the district court was without the authority to hold Phillips in custody and to continue his bond beyond 90 days from his November 1, 1995 arraignment. Accordingly, we hold that, 90 days after Phillips' arraignment, Bartsh was discharged

from liability on the bond it issued to guarantee Phillips' appearance.

■ One final comment is appropriate. It is not within the discretion of local authorities to decide when or whether to serve a properly issued governor's rendition warrant. The governor is under a constitutional obligation to deliver up demanded persons when proper demands are made for their return. Demanded persons have the right to challenge the legality of their arrests by bringing a writ of habeas corpus and to be confined for only reasonable periods of time, be it through incarceration or bail. Neither the governor's efforts to meet his constitutional obligations nor the demanded person's rights to challenge extradition and to remain in custody for only a reasonable amount of time are effectuated when local authorities circumvent the extradition process by holding a governor's warrant without authorization from the governor to do so. The incongruity of the county seeking the forfeiture of the Bartsh bond when the county failed to follow the clear mandate of the statute with respect to the execution of the governor's rendition warrant, the proper execution of which may have operated to discharge that bond, is not lost on this court.

We affirm the court of appeals on the grounds stated above and remand to the district court for reinstatement and discharge of the bond.

Affirmed.

LANCASTER, J. took no part in the consideration or decision of this case.