1999 UT App 310

**Larry Joe BOUDREAUX, Plaintiff and Appellant,**

v.

**STATE of Utah, Defendant and Appellee.**

**No. 981787–CA.**

Court of Appeals of Utah.

Oct. 28, 1999.

Andrew B. Berry, Jr., Moroni, for Appellant.

Jan Graham, Atty. Gen., and Mark E. Burns, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before WILKINS, P.J., BILLINGS, and JACKSON, JJ.

## OPINION

JACKSON, Judge:

¶1 Larry Joe Boudreaux (Boudreaux) appeals the trial court's denial of his petition for a writ of habeas corpus. The State of Kentucky requested Boudreaux's extradition as a nonfugitive, and in response the governor of Utah ordered Boudreaux's arrest. We

affirm the trial court's denial of Boudreaux's petition and authorize his immediate extradition to Kentucky.

## BACKGROUND

¶ 2 This is Kentucky's third attempt to extradite Boudreaux. Kentucky first tried to extradite Boudreaux in 1993 for the crime of flagrant nonsupport, a class D felony. *See* Ky.Rev.Stat. Ann. § 530.050 (Michie 1990). Boudreaux was charged with failing to pay child support for his daughter, a Kentucky resident. The extradition request sought Boudreaux as a fugitive from Kentucky. Boudreaux then petitioned for a writ of habeas corpus. The trial court granted his request because Boudreaux had been in Kentucky only once, before the child was born, and thus was not a fugitive as charged in the extradition request. In 1994, Kentucky again tried to extradite Boudreaux. Because the charging papers still alleged that Boudreaux was a fugitive, the trial court also granted his second petition for habeas corpus.

¶ 3 On June 5, 1996, a Kentucky grand jury indicted Boudreaux for flagrant nonsupport for a third time. This time, though, the charge was premised on Boudreaux having committed acts in Utah which resulted in a crime being committed in Kentucky. The governor of Kentucky, Paul E. Patten, executed a demand to the State of Utah on August 5, 1998, alleging that Boudreaux had committed the crime referenced in the indictment, and requesting his extradition as a nonfugitive. Governor Patten forwarded the extradition demand, the indictment, and a requisition packet to Governor Michael O. Leavitt of Utah.

¶ 4 Governor Leavitt then issued an arrest warrant and exercised his discretionary power under section 77–30–6 to surrender Boudreaux to Kentucky. *See* Utah Code Ann. § 77–30–6 (1999). Boudreaux was arrested soon after, and again filed a petition for a writ of habeas corpus. After hearing argument, the trial court denied Boudreaux's petition, and Boudreaux filed this appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 5 On appeal, Boudreaux presents thirty-six issues. However, the State argued—and Boudreaux conceded at oral argument—that Boudreaux has presented only five genuine issues. We agree. Boudreaux argues he should have been allowed to present evidence of his alleged innocence of the Kentucky charges at the hearing on his habeas corpus petition. He also argues that the two prior habeas proceedings, which were dismissed with prejudice, are res judicata and thus bar this extradition attempt. Boudreaux asserts that he has, in fact, paid child support, and that Utah—not Kentucky—has jurisdiction over the dispute about child support. Boudreaux further argues his due process rights have been violated by the proceedings in Kentucky and Utah. Finally, Boudreaux argues the trial court erred in not releasing him from jail or admitting him to bail.

¶ 6 On review of a petition for habeas corpus, we evaluate the record in a " ' "light most favorable to the findings and judgment." ' " *Seel v. Van Der Veur,* 971 P.2d 924, 926 (Utah 1998) (citations omitted). We will not reverse if reasonable grounds support the trial court's decision to deny the petition. *See id.* As in other contexts, we review the trial court's findings of fact for clear error and its conclusions of law for correctness. *See id.; Frausto v. State,* 966 P.2d 849, 851 (Utah 1998).

## DISCUSSION

### Governing Law

¶ 7 Both parties to this case, at the habeas hearing and on appeal, have relied on case law dealing with the extradition of fugitives. In that context, the law is clear and well developed. However, Boudreaux was charged as a nonfugitive, and no Utah statutes or case law articulate what standards should be applied to such a case. Accordingly, we must determine what law should be applied to the extradition of a nonfugitive. We first discuss the law as it applies to fugitives.

¶ 8 The authority for one state (the asylum state) to extradite a fugitive to another state (the demanding state) is found in Article IV,

Section 2, Clause 2 of the United States Constitution.[1] This provision is implemented by 18 U.S.C. § 3182 (1970).[2] "Federal law governs extradition, and State regulation merely supplements it." *People ex rel. Schank v. Gerace,* 231 A.D.2d 380, 661 N.Y.S.2d 403, 406 (1997); *see also* Prefatory Note, Uniform Criminal Extradition Act (U.L.A.). Most states have adopted the Uniform Criminal Extradition Act (UCEA), codified in Utah at Utah Code Ann. §§ 77–30–1 to –28 (1999), which establishes uniform procedures for handling interstate extradition.[3]

 ¶ 9 Interstate rendition of fugitives is a mandatory proceeding, compelled by the United States Constitution. *See New Mexico ex rel. Ortiz v. Reed,* 524 U.S. 151, 154, 118 S.Ct. 1860, 1862, 141 L.Ed.2d 131 (1998) (per curiam). In other words, once presented with authentic documents from a demanding state, the asylum state's governor *must* issue an extradition warrant. *See* Utah Code Ann. § 77–30–2 (1999) (stating "it is the duty of the governor" to extradite fugitive upon proper demand).

 ¶ 10 In contrast, the United States Constitution does not explicitly authorize interstate extradition of nonfugitives. This is provided for in section six of UCEA. Nonfugitive extradition is a discretionary function, based on principles of comity. *See* Utah Code Ann. § 77–30–6 (stating governor "may ... surrender" nonfugitive upon proper demand); *see also* Prefatory Note, UCEA (stating "the effectiveness of Section 6 ... depends upon comity between the states, rather than upon the mandatory effect of the Constitution").

 ¶ 11 Whether the law that has developed in the area of fugitive extradition also applies to nonfugitives is an issue of first impression in Utah. Although most of UCEA explicitly covers the extradition of fugitives, the provisions of UCEA "not otherwise inconsistent" apply fully to nonfugitive extradition. Utah Code Ann. § 77–30–6 (1999).[4]

¶ 12 In addition, we have an explicit statutory mandate to "interpret[ ] and construe[ ] [UCEA] as to effectuate its general purposes to make uniform the law of those states which enact it." Utah Code Ann. § 77–30–27 (1999). Accordingly, "judicial decisions from other states interpreting their codification of [UCEA] are 'particularly persuasive.' " *Jen-*

---

1. This clause provides:

 A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

 U.S. Const. art. IV, § 2, cl. 2.

2. Section 3182 provides:

 Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent

 appears within thirty days from the time of the arrest, the prisoner may be discharged.

 18 U.S.C. § 3182 (1970).

3. In 1980, the National Conference of Commissioners on Uniform State Laws approved the Uniform Extradition and Rendition Act (UERA), which supersedes the UCEA. *See* Uniform Extradition and Rendition Act (U.L.A.) §§ 1–101 to 6–102 (1980). To date, however, the UERA has been adopted by only one state, North Dakota. *See* Table of Jurisdictions Wherein Act Has Been Adopted, UERA (U.L.A.) (West 1995).

4. Section 77–30–6, the nonfugitive statute, provides:

 The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state, in the manner provided in Section 77–30–3, with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent shall apply to such cases even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom.

 Utah Code Ann. § 77–30–6 (1999).

*kins v. Garrison,* 265 Ga. 42, 453 S.E.2d 698, 702 n. 8 (1995) (citation omitted).

¶ 13 The majority of courts that have considered this issue have applied fugitive-specific case law to nonfugitive situations. *See, e.g., Kennon v. Hill,* 44 F.3d 904, 907–08 (10th Cir.1995) (applying Kansas law); *Whelan v. Noelle,* 966 F.Supp. 992, 998 n. 4 (D.Or.1997); *Allen v. Leach,* 626 P.2d 1141, 1143 (Colo.1981); *Hill v. Blake,* 186 Conn. 404, 441 A.2d 841, 844 (1982); *Jenkins,* 453 S.E.2d at 704; *In re Mahler,* 177 N.J.Super. 337, 426 A.2d 1021, 1030 (Ct.App.Div.1981); *State v. Hershey,* 31 Wash.App. 366, 641 P.2d 1201, 1203–04 (1982). These courts have seen no reason to vary the procedural protections afforded fugitives when addressing a nonfugitive extradition case. Moreover, treating fugitive and nonfugitive extraditions alike promotes uniformity of the laws and furthers comity between the states.

¶ 14 We agree with the reasoning of our sister states, and we will thus apply, by analogy, fugitive extradition law to cases in which extradition is sought under the nonfugitive statute, Utah Code Ann. § 77–30–6 (1999).

## Presentation of Evidence

█ ¶ 15 We turn now to the question of what evidence Boudreaux should have been allowed to present at the hearing on his habeas corpus petition. Boudreaux argues the trial court erred in not allowing him to present

> evidence, testimony [sic] and documentary, upon the allegations of his petition wherein he asserted that he was denied due process of law[,] … evidence that he was not served with nor provided notice of any

arraignment in Kentucky, that the affidavits … in support of the rendition were false, and that he had not "taken refuge in the State of Utah," as asserted in the Warrant of the Governor of the State of Utah [and] evidence upon the two (2), prior attempts to extradite him by the State of Kentucky upon identical claims and the granting by the trial court of his two (2), prior habeas corpus petitions which blocked both of Kentucky's attempts at extradition.

Boudreaux concedes that under UCEA, as it is applied to fugitives, he would not be allowed to present such evidence.[5]

¶ 16 In the case of fugitive extradition, the United States Supreme Court has clearly delineated the scope of judicial review of a habeas corpus petition. Once the asylum state's governor has granted the demanding state's extradition request,

> a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable.

*Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). Because "[i]nterstate extradition was intended to be a summary and mandatory executive proceeding … [, t]he [Extradition] Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the ini-

---

5. Nonetheless, he contends that the Uniform Interstate Family Support Act (UIFSA), Utah Code Ann. §§ 78–45f–100 to –901 (Supp.1999), allows the presentation of such evidence, and that UIFSA controls UCEA in this case. However, Boudreaux does not adequately explain, nor do we perceive any reason, why UCEA and UIFSA should be read in this way. UCEA governs the extradition of fugitive and nonfugitive criminals, some of whom may have been charged with failing to pay child support. UIFSA has as its exclusive subject matter the interstate collection of child support, and a provision for interstate extradition that complements UCEA. However, a demanding state may choose which remedy to elect when pursuing a parent for failure to pay child support—that is, it may proceed under UIFSA, UCEA, or both. *See Conrad v. McClearn,* 166 Colo. 568, 445 P.2d 222, 224 (1968) (stating "either or both courses of action may be pursued, and the election lies wholly with the demanding state and the obligee"); *see also* Utah Code Ann. § 78–45f–103 (Supp.1999) ("Remedies provided by [UIFSA] are cumulative and do not affect the availability of remedies under other law."). Here, Kentucky chose to seek Boudreaux's extradition under UCEA. Neither UCEA nor UIFSA mandates the result Boudreaux seeks.

tial arrest and trial." *Id.* at 288, 99 S.Ct. at 535.

¶ 17 This principle is codified in section 77–30–20 of UCEA, which provides that

[t]he guilt or innocence of the accused as to the crime of which he is charged in another state may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime.

Utah Code Ann. § 77–30–20 (1999); *see also Topp v. Hayward,* 746 P.2d 783, 785 (Utah 1987) (involving inquiry into identity of fugitive); *Emig v. Hayward,* 703 P.2d 1043, 1046–47 (Utah 1985) (stating "the inquiry into participation in the underlying crimes goes to the merits of the charge in the demanding state and is beyond the ambit of the asylum state's interest in the matter"); *Langley v. Hayward,* 656 P.2d 1020, 1022 n. 1 (Utah 1982) (noting *Doran* factors are only considerations for asylum state court in extradition cases); *Hernandez v. Hayward,* 764 P.2d 993, 995 (Utah Ct.App.1988) (refusing to consider petitioner's challenge to his conviction, imprisonment, and parole violations all taking place in Idaho).

¶ 18 For the reasons articulated in the preceding section, we hold that the scope of inquiry in a habeas corpus proceeding brought by a nonfugitive extraditee is limited to that allowed in fugitive extradition cases. Thus, Boudreaux was not allowed to present the desired evidence at his habeas hearing, and could only have presented evidence of the four *Doran* factors. *See* Utah Code Ann. § 77–30–20 (1999); *Doran,* 439 U.S. at 289, 99 S.Ct. at 535. As those facts were undisputed, the trial court correctly denied Boudreaux's request to present evidence at the hearing.

### Res Judicata

¶ 19 The two prior extradition attempts, both brought under Utah Code Ann. § 77–30–2 (1999), identified Boudreaux as a fugitive. Boudreaux's habeas petitions were granted in both instances because Boudreaux

was not, in fact, a fugitive from Kentucky. Boudreaux now argues this proceeding is barred by res judicata because the two prior extradition attempts were dismissed with prejudice.

¶ 20 Res judicata "'refer[s] to the overall doctrine of the preclusive effects to be given to [prior] judgments.'" *In re General Determination of the Rights to the Use of All the Water, Both Surface and Underground v. Springville Mun. Corp.,* 982 P.2d 65, 70 (Utah 1999) (quoting *Noble v. Noble,* 761 P.2d 1369, 1374 n. 5 (Utah 1988)). Res judicata applies to habeas corpus hearings. *See Burleigh v. Turner,* 15 Utah 2d 118, 120, 388 P.2d 412, 414 (Utah 1964). Its "obvious purpose … is to discourage successive applications based upon the same grounds." *Id.* The doctrine of "res judicata has two branches: … '"claim preclusion" … refer[s] to the branch which has often been referred to as "res judicata" or "merger and bar."'" *In re General Determination,* 982 P.2d at 70 (citation omitted). "'"[I]ssue preclusion" … refer[s] to the branch often termed "collateral estoppel."'" *Id.* (quoting *Noble,* 761 P.2d at 1374 n. 5 (citation omitted)). In this case, Boudreaux does not specify which branch of res judicata should apply, nor does he identify the requirements needed to satisfy either branch. Nonetheless, it is apparent from his brief that he believes issue preclusion applies to this extradition attempt.

¶ 21 Issue preclusion "prevents parties or their privies from relitigating issues which were once adjudicated on the merits and have resulted in a final judgment." *Id.* Issue preclusion applies if four elements are satisfied:

(i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits.

*Id.* Here, the first element is satisfied, as Boudreaux was a party to all three extradi-

tion proceedings. However, Boudreaux's argument fails on the second element, because in the two prior extradition hearings the issue was whether Boudreaux should be extradited as a fugitive under section 77–30–2. In those two proceedings, the State would have been required to show that Boudreaux had "fled from justice and [was now] found in" Utah. Utah Code Ann. § 77–30–2 (1999). However, in this case, Kentucky sought Boudreaux's extradition as a nonfugitive under section 77–30–6. The State was thus required to show that Boudreaux was "charged in ... [an]other state ... with committing an act in this state ... intentionally resulting in a crime in the [demanding] state." *Id.* § 77–30–6. Accordingly, Boudreaux's issue preclusion argument fails.[6]

### District Court's Jurisdiction

¶ 22 Boudreaux next argues Utah, rather than Kentucky, has jurisdiction over the collection of any child support arrearages, and asserts that he has in fact paid child support. However, Boudreaux is charged with *criminal* flagrant nonsupport under Kentucky Rev. Stat. Ann. § 530.050 (Michie 1990), and the *civil* collection of child support is not at issue. We thus reject Boudreaux's argument that Utah has jurisdiction over him in this Kentucky criminal nonsupport matter.

### Due Process

¶ 23 Boudreaux asserts both Utah and Kentucky have denied him due process of law under the Federal Constitution on four grounds: First, he asserts he was not notified of the Kentucky grand jury or arraignment proceedings. Second, he takes issue with the Utah governor's warrant, which states that Boudreaux has "taken refuge" in Utah. Third, he argues Kentucky's failure to provide for bail in its arrest warrant violates his due process rights. Finally, he contends

the affidavits supporting the Kentucky proceedings are false.

¶ 24 UCEA specifies how extradition proceedings are to be conducted and the act ensures that "the demanded person's due process rights are safeguarded." *State v. Phillips*, 587 N.W.2d 29, 34 (Minn.1998). A governor's warrant is presumed valid, and "[a] governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." *Michigan v. Doran*, 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978); *accord Emig v. Hayward*, 703 P.2d 1043, 1047 (Utah 1985).

¶ 25 Boudreaux does not contend that the state failed to comply with any of UCEA's procedural requirements. Accordingly, we conclude that Boudreaux's due process rights were observed by the State of Utah. As to his complaints with the Kentucky courts' procedure, we reiterate that those matters are properly raised in Kentucky, not Utah.

### Right to Bail

¶ 26 Finally, Boudreaux argues he should have been released from incarceration or admitted to bail. The State counters, and the trial court agreed, that under *Emig v. Hayward*, 703 P.2d 1043 (Utah 1985), Boudreaux could not be admitted to bail.

¶ 27 In *Emig*, the supreme court held that a fugitive extraditee was entitled to bail after he was indicted in the demanding state but before the Utah governor's warrant had issued. *See id.* at 1049. However, once the governor's warrant for arrest had issued, the fugitive was not entitled to bail. *See id.* at 1050. This holding was grounded on the rationale that in extradition cases " 'the offense is not one cognizable in the courts of the asylum state, whereas the demanding

---

6. Our decision comports with other jurisdictions' treatment of the issue. *See, e.g., Collins v. Loisel*, 262 U.S. 426, 430, 43 S.Ct. 618, 619, 67 L.Ed. 1062 (1923) (international extradition); *Boyd v. Van Cleave*, 180 Colo. 403, 505 P.2d 1305, 1307 (1973) (holding extradition of nonfugitive after previous attempt to extradite him as fugitive not barred by res judicata and noting *"[r]es judicata* has but limited application in extradition pro-

ceedings"); *People ex rel. Schank v. Gerace*, 231 A.D.2d 380, 661 N.Y.S.2d 403, 411–15 (1997) (stating under majority approach collateral estoppel has been "virtually nullif[ied] ... in [fugitive] extradition cases"); *State v. Van Buskirk*, 527 N.W.2d 922, 924 (S.D.1995) (holding dismissal of extradition attempt "with prejudice" not bar to subsequent proceeding based on new process).

state has all of the facilities to determine the gravity of the offense, the amount of bail, if any, and the conditions thereof.' " *Id.* (citation omitted). The court reasoned that because the asylum state has a strong interest in delivering the fugitive to the demanding state, it should not risk losing custody of the fugitive. *See id.*

¶ 28 We need not decide whether *Emig* should apply to a nonfugitive extradition case, because the UCEA provision governing bail has been changed since *Emig* was decided. Section 77–30–16(2), effective May 5, 1997, provides that

> [a] person arrested under Section 77–30–13 shall be admitted to bail as a matter of right, *except the court has discretion to deny bail* as provided in Utah Constitution Article I, Section 8, and *when a judge or magistrate in the demanding state has ordered that the person charged be held without bail* or the person has waived extradition.

Utah Code Ann. § 77–30–16(2) (1999) (emphasis added).

¶ 29 This section applies to Boudreaux's case because he was arrested pursuant to a governor's warrant issued under section 77–30–13. The bail statute's plain language states that the trial court has the discretion to deny bail if the demanding state has not provided for bail. *See id.* In this case, the Kentucky bench warrant had a no-bail provision. Boudreaux has not argued, nor do we perceive, any reason why the Utah trial court's decision to deny bail was an abuse of discretion. Moreover, section 77–30–16(3) establishes a "rebuttable presumption that the bail set by the court or magistrate in the demanding state is the proper amount of bail in" the asylum state. *Id.* § 77–30–16(3). Boudreaux has presented no evidence to rebut this presumption.

¶ 30 We are mindful that Boudreaux has spent more than a year in jail while pursuing this habeas petition. However, had Boudreaux been "intent on being released on bail . . . he should have allowed himself to be extradited to [Kentucky] and there sought bail." *Emig,* 703 P.2d at 1050.

 ¶ 31 In sum, we conclude the trial court did not abuse its discretion and affirm its ruling that Boudreaux is not entitled to bail, albeit on different grounds. *See Orton v. Carter,* 970 P.2d 1254, 1260 (Utah 1998) (stating that "an appellate court may affirm a 'judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record,' even though that ground or theory was not identified by the lower court as the basis of its ruling" (citation omitted)).

## CONCLUSION

¶ 32 We hold that *Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978), and its progeny govern what evidence can be presented in a nonfugitive extradition case. As a result, Boudreaux was not entitled to present evidence at the habeas hearing beyond the four *Doran* factors. Further, this extradition attempt is not barred by issue preclusion because the demand was made under a different statute. We also reject Boudreaux's contention that Utah, rather than Kentucky, has jurisdiction over this criminal nonsupport action. Moreover, Boudreaux has failed to show any violation of his due process rights. Finally, the trial court did not abuse its discretion when it denied bail to Boudreaux.

¶ 33 Accordingly, we affirm the trial court's denial of Boudreaux's petition for writ of habeas corpus and order Boudreaux's immediate extradition to Kentucky.

¶ 34 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and JUDITH M. BILLINGS, Judge.