2002 UT App 431

STATE of Utah, Plaintiff and Appellee,

v.

Richard A. JOHNSON, Defendant and Appellant.

No. 20010709–CA.

Court of Appeals of Utah.

Dec. 19, 2002.

Joan C. Watt and Stephen W. Howard, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and J. Frederic Voros Jr., Salt Lake City, for Appellee.

Before JACKSON, P.J., BILLINGS, Associate Presiding Judge and DAVIS, J.

### AMENDED OPINION [1]

BILLINGS, Associate Presiding Judge:

¶ 1 Defendant Richard A. Johnson appeals from a district court order denying his Motion to Dismiss for Lack of Jurisdiction. This case is before the court on interlocutory review. We affirm.

## BACKGROUND

¶ 2 The State of Utah charged Defendant with one count of criminal nonsupport, a third degree felony, in violation of Utah Code Ann. § 76–7–201(1), (3)(c) (1999) (the Criminal Nonsupport Statute). The amended information alleges that between March 1, 1996 and July 20, 2001, Defendant failed to pay child support, as ordered by an Alaska divorce decree, for his children who would have been in needy circumstances but for support from other sources.

¶ 3 Defendant moved to dismiss the information for lack of jurisdiction under Utah Code Ann. § 76–1–201 (1999) (the Criminal Jurisdiction Statute). Following a hearing, the district court denied Defendant's motion to dismiss. The court concluded Utah has jurisdiction to prosecute Defendant under the plain language of the Criminal Jurisdiction and Criminal Nonsupport Statutes. Thereafter, Defendant filed a petition for interlocutory review of the denial of his motion. This court granted the petition.

## ANALYSIS

¶ 4 Defendant argues the district court erred in concluding Utah has jurisdiction to prosecute him, a Utah resident, for criminal

---

1. This Amended Opinion replaces the Court's original Opinion in this case, Case No. 20010709–CA, 2002 UT App 413, 2002 WL 31769495, issued December 12, 2002.

nonsupport for failure to pay child support under an Alaska court order for children who have never resided in nor visited Utah. Whether the district court erred in concluding that Utah has jurisdiction is a question of law that we review for correctness. *See State v. Amoroso,* 1999 UT App 60,¶¶ 6, 18, 975 P.2d 505.

¶ 5 The Criminal Jurisdiction Statute provides in relevant part:

(1) A person is subject to prosecution in this state for an offense which he commits, while either within or outside the state, by his own conduct . . . if:

(a) the offense is committed either wholly or partly within the state[.]

. . . .

(2) An offense is committed partly within this state if either the conduct which is any element of the offense, or the result which is such an element, occurs within this state.

. . . .

(4) An offense which is based on an omission to perform a duty imposed by the law of this state is committed within the state regardless of the location of the offender at the time of the omission.

Utah Code Ann. § 76–1–201. Under this statute, which is based upon the Model Penal Code, Utah has jurisdiction to prosecute an offense that is committed wholly or partly within Utah.

■■■ ¶ 6 Defendant maintains that by failing to pay child support to his children in Alaska, he committed an offense wholly in Alaska, not partly in Utah. Under the plain language of the Criminal Jurisdiction Statute, a crime is committed partly within Utah if conduct that is any element of an offense or a result that is an element of an offense occurs within Utah. *See id.* The Model Penal Code defines "conduct" as "an action or omission and its accompanying state of mind,

or, where relevant, a series of acts and omissions." Model Penal Code § 1.13(5), 10A U.L.A. 91 (2001). "Omission" is defined as "a failure to act." *Id.* § 1.13(4). At issue in the present case is whether Defendant's alleged failure to act—his failure to pay child support, is "conduct" that is "any element" of criminal nonsupport that occurred within Utah.

¶ 7 Defendant was charged with violating the Criminal Nonsupport Statute, which provides that a person may be convicted of criminal nonsupport if

having . . . a child, or children under the age of 18 years, he knowingly fails to provide for the support of the . . . child, or children when any one of them:

(a) is in needy circumstances; or

(b) would be in needy circumstances but for support received from a source other than the defendant or paid on the defendant's behalf.

Utah Code Ann. § 76–7–201(1).

■■ ¶ 8 Thus, to be convicted of criminal nonsupport in Utah, a person must (1) be the parent of a child under 18 and (2) knowingly fail to provide for the support of that child when (3) the child is in needy circumstances or would be in needy circumstances but for support received from other sources. *See id.*[2]

¶ 9 Utah appellate courts have not addressed whether a Utah resident who fails to provide support for nonresident children commits criminal nonsupport partly in Utah. Defendant relies upon *Osborn v. Harris,* 115 Utah 204, 203 P.2d 917 (1949) and *Boudreaux v. State,* 1999 UT App 310, 989 P.2d 1103, as supporting the proposition that the failure to provide support occurs wholly where the children reside. We disagree.

¶ 10 In *Osborn,* the Utah Supreme Court interpreted a prior version of the Criminal Nonsupport Statute[3] in holding that Utah

**2.** Additionally, in this case, Defendant is charged with a third degree felony for committing "the crime of nonsupport in each of 18 individual months within any 24–month period" or because "the total arrearage is in excess of $10,000." Utah Code Ann. § 76–7–201(3)(c) (1999).

**3.** The statute at that date was similar to the present statute. It provided, " 'Any person who, . . . without just excuse, deserts or willfully neglects or refuses to provide for the support and maintenance of his or her minor child or children, under the age of sixteen years, in destitute or necessitous circumstances is guilty of a felony.' " *Osborn v. Harris,* 115 Utah 204, 203 P.2d

had jurisdiction to prosecute a nonresident parent for failure to provide support "in the state in which he has permitted his wife or children to live, or in which his misconduct has induced them to seek refuge." 203 P.2d at 921. In so holding, the court recognized that criminal nonsupport statutes are " 'for the benefit of the child[ren and] . . . for the purpose of enforcing the natural duties of parents to their children.' " *Id.* at 920 (quoting *In re Poage*, 87 Ohio St. 72, 100 N.E. 125, 128 (1912)). The court then stressed, " 'citizens of another state cannot permit their children to become objects of charity in this state and defend against a prosecution under our laws to compel parents to provide for their minor children by the plea that they are not citizens of this state.' " *Id.* Although it was therefore "reasonable to say that . . . [the] duty to support [the children] lies in the state where they are so located," the court did not "express any opinion as to whether or not [the parent who failed to provide support was] guilty of a crime in both" Utah and the state of his residence. *Id.* at 920–21. Further, *Osborn* was decided before the Criminal Jurisdiction Statute was enacted, and thus it does not address whether, in failing to provide support for nonresident children, a Utah resident defendant commits an offense partly in Utah.

¶ 11 In Boudreaux, the defendant was charged with criminal flagrant nonsupport under Kentucky's criminal nonsupport statute for "having committed acts in Utah which resulted in a crime being committed in Kentucky." 1999 UT App 310 at ¶ 3, 989 P.2d

1103. The defendant challenged his extradition to Kentucky as a nonfugitive, arguing Utah, rather than Kentucky, had jurisdiction over the collection of support arrearages and arguing he had paid child support. *See id.* at ¶ 22, 989 P.2d 1103. Because the defendant was charged with criminal nonsupport under the Kentucky statute and the civil collection of support was not at issue, this court rejected the defendant's argument that Utah had "jurisdiction over him[, a Utah resident,] in [the] Kentucky criminal nonsupport matter." *Id.* However, in so holding, this court did not address whether the defendant committed an offense partly in Utah and thus whether Utah had concurrent jurisdiction to bring charges under Utah's Criminal Nonsupport Statute. Thus, *Boudreaux* does not control our analysis.

¶ 12 To support his argument that his "conduct" occurred wholly in Alaska, Defendant also relies upon generally recognized principles of criminal law that the failure to provide support for a child is a crime of omission; a crime of omission is committed where the duty to act lies; the duty to act in a criminal nonsupport case is where support is owed and the child resides; thus, criminal nonsupport is committed where the child resides. However, almost all of the cases Defendant cites fail to address whether a state may prosecute a resident parent for failure to provide support for a nonresident child under statutes similar to Utah's statutes.[4]

¶ 13 Nor does it necessarily follow from the general rule—that a state may prosecute

---

917, 920 (1949) (quoting Utah Code Ann. § 103–13–1 (1943)).

**4.** Defendant cites cases that involve similar statutory schemes, but are distinguishable because they do not address whether jurisdiction is proper over resident parents for failure to support nonresident children in holding that jurisdiction is proper over nonresident parents. *See State v. Sokolaski,* 26 Kan.App.2d 333, 987 P.2d 1130, 1131 (1999) (holding Kansas could prosecute nonresident parent for failure to support Kansas resident child because the "criminal nonsupport occurred partly in Kansas and the proximate result of [the defendant's] actions (the failure to provide support for [the child] ) occurred within [Kansas]"); *State v. Taylor,* 625 N.E.2d 1334, 1336 (Ind.Ct.App.1993) (noting "nonsupport is an omission which also occurs . . . where the

child[ren] reside" in holding Indiana had jurisdiction to prosecute nonresident parent who failed to support Indiana resident children).

Other cases are distinguishable because they involve dissimilar provisions and do not address whether jurisdiction is proper over resident parents who fail to support nonresident children. *See, e.g., State v. Shaw,* 96 Idaho 897, 539 P.2d 250, 252–53 (1975) (concluding Idaho had jurisdiction to prosecute nonresident parent for criminal nonsupport under statute providing, " '[w]hen the commission of a public offense, commenced without the state is consummated within its boundaries, the defendant is liable to punishment therefor in this state, though he was out of the state at the time of the commission of the offense charged' " (emphasis and citation omitted)).

a nonresident parent for failure to support a resident child, that a state may not prosecute a resident parent for failure to support a nonresident child. *See State v. Gantt*, 201 Wis.2d 206, 548 N.W.2d 134, 136 (Ct.App. 1996) (emphasizing that although Wisconsin cases holding Wisconsin has jurisdiction to prosecute nonresident parents for failing to support Wisconsin resident children are consistent with general criminal law rule, such cases do not hold that "nonsupport statutes may be enforced *only* in the place where the child[ren] reside[ ]"); *see also United States v. Lombardo*, 241 U.S. 73, 77–78, 36 S.Ct. 508, 510, 60 L.Ed. 897 (1916) (recognizing in dicta that "where there is a general duty it may be considered as insistent both where the 'actor' is and the 'subject' is . . . as in the case of the duty of a father to support his children; and if the duty ha[s] criminal sanction it may be enforced in either place"). In fact, there is authority generally recognizing that because criminal nonsupport is a continuing offense, jurisdiction is proper where either the parent or child resides. *See Virgin Islands v. Audain*, 366 F.Supp. 710, 713 (V.I.1973) (concluding under criminal nonsupport statute jurisdiction was proper where parent or child resided because the duty to provide support is continuing and because the criminal nonsupport statute "[did] not require the child to be a resident of the state"); *State v. Echavarria*, 101 N.H. 458, 146 A.2d 256, 256 (1958) ("[I]t is also generally held that nonsupport is a continuing offense which can occur at the place where the wife or children live, at the father's residence or at both.").

¶ 14 We conclude Utah and Alaska have concurrent jurisdiction. We are persuaded by the reasoning of the Ohio and Missouri courts. In *State v. Rosenstock*, No. 95APA05–517, 1995 WL 723535, 1995 Ohio App. LEXIS 5383 (Dec. 7, 1995), an Ohio resident parent was ordered to pay child support by an Ohio court. *See id.* at *1, at *2. Following the divorce, the custodial parent and child moved to Maryland. *See id.* at *1, at *1. Thereafter, Ohio charged the resident parent with failing to provide adequate support. *See id.* at *1, at *2. The resident parent maintained that Ohio lacked jurisdiction to prosecute him, contending that jurisdiction was proper only in the state where the child resided. *See id.* at *2, at *4. The state maintained that Ohio had jurisdiction because the resident parent was required to pay child support under an Ohio court order. *See id.* at *2, at *5. The Ohio Court of Appeals agreed that Ohio had jurisdiction, *see id.* at *2–3, at *6, but not because of the resident parent's failure to comply with the Ohio support order, *see* Ohio Rev.Code Ann. § 2919.21(B) (Anderson 2002), as the resident parent had been charged with failing to provide adequate support, *see id.* § 2919.21(A)(2), and the failure to pay child support under an order was not an element of the offense of failing to provide adequate support. *See Rosenstock*, 1995 WL 723535 at *2, 1995 Ohio App. LEXIS 5383 at *5. The court held Ohio had jurisdiction to prosecute the resident parent because "an element of the offense with which [the resident parent] was charged took place in [Ohio]." *Id.* at *2, at *6. "[F]ailing to provide adequate support takes place where the [parent] resides because that is where [the parent's] failure to perform the required act fairly can be said to occur." *Id.* at *2, at *5–6.

¶ 15 In *State v. Johnson*, 782 S.W.2d 827 (Mo.Ct.App.W.D.1990), the Missouri Court of Appeals held that Missouri had jurisdiction under Missouri's criminal jurisdiction statute, which is similar to Utah's jurisdiction statute,[5] to prosecute a Missouri resident parent for nonsupport of his nonresident child under a criminal nonsupport statute, which was somewhat similar to Utah's nonsupport statute.[6] *See id.* at 828. The Missouri resident

---

5. It provides that Missouri "has jurisdiction over an offense that a person commits by his own conduct if conduct constituting any element of the offense occurs within [the] state." *State v. Johnson*, 782 S.W.2d 827, 827 (Mo.Ct.App.W.D. 1990) (citing Mo.Rev.Stat. § 541.191(1) (Supp. 1989)).

6. At that time the statute provided, " 'A parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his minor child.' " *State v. Davis*, 675 S.W.2d 410, 413–14 (Mo.Ct.App. 1984) (quoting Mo.Rev.Stat. § 568.040 (1978)). Unlike Utah's statute, Missouri's statute also pro-

parent was obligated to pay child support under a Florida court order, which was registered in Missouri. *See id.* at 827. Following registration of the order, Missouri charged the resident parent with criminal nonsupport. *See id.* On appeal, the resident parent contended Missouri lacked jurisdiction because the child, a Florida resident, did not have substantial contacts with Missouri and the Uniform Reciprocal Enforcement of Support Act (URESA) granted exclusive jurisdiction to Florida. *See id.* at 827–28. Missouri contended it had jurisdiction because "conduct constituting the crime of non-support occurred in [the] state." *Id.* at 828. The court summarily concluded that Missouri's exercise of jurisdiction was consistent with Missouri's criminal jurisdiction statute and was not inconsistent with URESA. *See id.* Thus, the court concluded Missouri properly exercised jurisdiction over the resident parent. *See id.*

¶ 16 We conclude that Defendant could be convicted of criminal nonsupport if he is found to have "knowingly" failed to provide support for his Alaska resident children—a negative act, that was "any element" of criminal nonsupport, an offense in Utah.[7] Although Defendant makes much of the fact that an Alaska court entered the support order, a Utah support order is not an element of criminal nonsupport under Utah Code Ann. § 76–7–201(1) or (3)(c). We are unpersuaded by Defendant's argument that Utah does not have an interest in prosecuting resident parents who fail to support their nonresident children.[8]

¶ 17 We therefore affirm.

¶ 18 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and JAMES Z. DAVIS, Judge.

vided, " '[s]upport' means food, clothing, lodging, and medical or surgical attention." *Id.* at 414.

7. Our conclusion is consistent with the Model Penal Code's rejection of "the old common law doctrines of strict territoriality and of assigning exclusive jurisdiction to the state where the last element occurred." Model Penal Code § 1.03 explanatory note, 10A U.L.A. 26 (2001).

8. We are persuaded by a number of policy reasons to hold that Utah has jurisdiction to prosecute Defendant for criminal nonsupport under the facts of this case. First, the law should make it more difficult, rather than easier, to avoid child support obligations. Second, Utah has no interest in becoming a haven for those who seek to avoid support obligations. Third, in cases such as the present, it is more convenient for defendants to be prosecuted where they reside, especially given that their financial and employment records are more likely to be where they reside. Additionally, in this case, Defendant is indigent and is represented by appointed counsel. Fourth, Utah is in a better position to extract support from residents who fail to support their children than other states are to extract support from nonresidents. Fifth, Utah has an interest in ensuring that residents comply with Utah laws. Sixth, in cases where children are scattered across several states, judicial economy favors prosecution in one state. Finally, less public funds may be required for prosecution here than for extradition to another state.